## 10313

### STATE v. CHARLESTON BRIDGE COMPANY.

#### (101 S. E. 657.)

1. BRIDGES—FAILURE OF OWNER TO KEEP IN PROPER CONDITION CONSTITUTES CRIME.—Under Cr. Code 1912, sec. 618, not only must the proprietor of a bridge keep the bridge in such condition as to answer the ends of its creation, but it should be kept in such condition as to accommodate the growing demands of modern traffic, or surrender its charter, and, failing to do so, is guilty of a criminal offense.

2. CRIMINAL LAW—COMMON LAW IN FORCE ON FAILURE TO KEEP BRIDGE IN REPAIR.—The provision in Cr. Code 1912, sec. 618, that proprietors of turnpike roads "shall be liable to indictment at common law," shows clearly that the common law is applicable to a prosecution of a bridge company under such section for failure to keep its bridge in proper condition.

3. COMMON LAW—IN FORCE IN STATE.—The common law of England is in force in the State, even though the statute adopted in 1712, "All and every part of the common law of England, where the same is not altered by this act or inconsistent with the Constitution, customs and laws of this State, is hereby continued in full force and virtue within this State in the same manner as before the adoption of this act," is not included in the Code of Laws of 1912; the statute being merely declaratory in its nature.

4. BRIDGES—SENTENCE FOR FAILURE TO PROPERLY MAINTAIN ERRONEOUS.—In a prosecution of a bridge company under Cr. Code 1912, sec. 618, for failure to keep its bridge in proper condition, a sentence to pay a fine, one-half to go to the informer and the other half to the bridge company, cannot be sustained, where the bridge company itself was owner of bridge, but sentence should be awarded under section 105, conformable to the common usages and practice in the State, since the bridge company was not committing an offense against itself.

Before MEMMINGER, J., Charleston, Summer term, 1919. Reversed and remanded for proper sentence.

The Charleston Bridge Company was convicted for not keeping its bridge in proper condition, and appeals.

The defendant's exceptions, ordered reported, are as follows:

1. That his Honor erred in not quashing the indictment in the case, on the ground that section 618 of Criminal Code 1912 is applicable only when a bridge is allowed so to fall into disuse and lack of repair as not to be a bridge, and thereby become a nuisance, and no facts appear in the indictment warranting such an inference or conclusion.

2. That his Honor, in not quashing the indictment in this case on the ground that section 618, Criminal Code 1912, is incongruous, in that its title is "Proprietors of Bridges Liable to Indictment for Not Keeping Up Their Work—Penalties Recovered—How to Be Applied;" whereas, the act purports to define offenses by owners of bridges, and only fixes penalties for offenses against owners of bridges, and is, therefore, violative of article III, section 17, of Constitution of S. C. 1895.

3. That his Honor erred in not quashing the indictment on the ground that section 618, Criminal Code 1912, is incongruous and meaningless, in that it provides no punishment, except for offenses against bridge owners, and that a conviction of defendant under this statute would be meaningless.

4. That his Honor erred in not quashing the indictment on the ground that section 618 of Criminal Code 1912 is incongruous, in that it is an old and obsolete statute, no longer of force in this State by reason of disuse, and is meaningless in its terms.

5. That his Honor erred in not quashing the indictment on the ground that there was no longer any common law in force in this State applicable to this case; whereas, he should have held that there is no statutory law in this State perpetuating the common law applicable to this case, and that there is no common law in this State applicable to this case.

6. That his Honor erred in not quashing the indictment on the ground that there is no common law of force in this State applicable to this case; whereas, he should have held that by the act of 1911 (known as section 2838 [2830],

Code 1912, vol. I) the common law indictment was abolished as to corporations, and that by the act of March 13, 1919 (Statutes 1919, p. 285), owners of toll bridges are no longer required to keep up their works to answer the ends of their creation, but must keep them up in accordance with the requirements of the State highway department of this State.

7. That his Honor erred in allowing witness for the State, W. R. Bonsal, to testify as to plan to repair bridge without hindrance to land traffic; whereas, it is submitted that this plan would obstruct navigation and be a violation of Federal statutes known as page 1150, 30 Stat. at Large (Act March 3, 1899c, 425, sec. 9 [U. S. Comp. St., sec. 9971]) and page 362, 28 Stat. at Large (Act August 18, 1894c, 299, secs. 4, 5 [U. S. Comp. St., secs. 9861, 9973]), prohibiting the obstruction of channels and regulating the use of draws in bridges.

8. That his Honor erred in allowing witnesses of the State, Momar Goldsmith and J. W. Brandt, to testify as to motor trucks not being allowed to cross the bridge; whereas, it is respectfully submitted that this class of transportation was not contemplated in the act under which this bridge was constructed, nor when the present bridge was actually constructed.

9. That his Honor erred in allowing witness of State, Wilson G. Harvey, to offer in evidence and in admitting in evidence statement of earnings of bridge; whereas, it is submitted that this testimony was irrelevant, and only tended to cloud the real issues of the case.

10. That his Honor erred in refusing to direct a verdict in favor of defendant in this case, on the ground that there was no testimony tending to show a violation of any criminal law in this State.

11. That his Honor erred in refusing to direct a verdict in this case in favor of defendant on the ground that the testimony showed without contradiction that the bridge had

never ceased to be a bridge during the times alleged in the indictment, was answering the ends of its creation, and was only closed for a short time for necessary repairs.

12. That his Honor erred in refusing motion of directed verdict in favor of defendant, and in holding that section 618, Criminal Code 1912, contemplated that the defendant must not only keep up the bridge for the purpose for which it was created, but must provide for different kind of travel as it progressed, and that otherwise defendant should abandon the bridge and surrender its charater; whereas, it is submitted that said section should be construed strictly, and only provides for keeping up the bridge to answer its ends at the time of its creation.

13. That his Honor erred in charging the jury in this case that the "ends of the creation of a toll bridge over a navigable stream involves the idea, not only that it was to carry such traffic as was reasonably expected at the time, but to measure up to such requirements as it should thereafter be called upon to do in the carriage of traffic; in other words, to adapt themselves to the conditions as they might arise in the future, which is the object of the creation of a bridge, not only to carry the traffic then presented, but to adapt itself to changed conditions; otherwise to abandon the enterprise and let some one else take it up"—it being respectfully submitted that said section 618 of Criminal Statute 1912 is a criminal statute, and should be construed strictly, as only requiring defendant to keep bridge in condition to answer the ends contemplated at time of its creation.

14. That his Honor erred in commenting on remarks of counsel of defendant about "people being dragged into a criminal Court, etc.;" whereas, it is respectfully submitted that it is a disgrace to be dragged into a criminal Court, and that, even if this were not so, such comment on argument of counsel was unnecessary, and tended to prejudice the jury against the defendants and its counsel.

15. That his Honor erred in refusing to charge the following written request of defendant, viz.: "The jury is instructed that the bridge in question was authorized and created under the provisions of the Act of 17th of December, 1808, at a time when automobiles and heavy trucks were not in existence, and that the failure to provide a bridge suitable for automobiles and heavy trucks could not be deemed a violation of the law requiring the bridge to be kept in condition to answer the ends of its creation"—whereas, it is submitted that this is a correct proposition of law and applicable to this case.

16. That his Honor erred in refusing to charge the following written request of defendant, viz.: "That it appears from the evidence that the present bridge was built about 1886. If you find that the bridge was suitable for traffic such as was contemplated by the builders of the bridge at that time, and was only closed for necessary repairs, you must find the defendant not guilty"—whereas, it is submitted that this is a correct proposition of law applicable to this case.

17. That his Honor erred in refusing to charge the following written request of defendant, viz.: "That under the act authorizing said bridge the bridge company was and is authorized to make such rules and by-laws not repugnant to the laws of the land for the good order and proper government of said company as may be thought expedient or necessary"—whereas, it is submitted that same was a correct proposition of law applicable to this case.

18. That his Honor erred in refusing to charge the following request of defendant: "That not until the act of 1919, placing bridges in the State under the supervision of the State highway commission, has the General Assembly of this State seen fit to exercise any supervision over toll bridges owned by private corporations, and have left the managament and control of same to the officers and direc-

tors of said corporation"—whereas, it is submitted that this was a correct proposition of law applicable to this case.

19. That his Honor erred in refusing to charge the following written request of defendant: "That it was no offense against the laws of this State for defendant company, during the course of repairs on said bridge, to refuse to use any temporary makeshift for the use of said bridge, as there is no law in this State requiring the bridge to be kept open at all hazards; but, on the contrary, the law specifically provides that when a bridge is injured by freshets or otherwise the bridge may be closed, provided the repairs are commenced within six months and completed within two years. Section 2170, vol. I, Code 1912"—whereas, it is respectfully submitted that this was a correct proposition of law applicable to this case.

20. That his Honor erred in refusing to charge the following written request of defendant, viz.: "The act of Congress prohibits the obstruction of navigable streams except in ways affirmatively authorized by Congress, and I charge you that Congress has only authorized the erection of bridges across navigable streams with suitable draws as provided by statute, and that these draws must be opened and caused to be opened under such rules and regulations as in the opinion of the Secretary of War the public interests may require" —whereas, it is submitted that this was a correct proposition of law applicable to this case.

21. That his Honor erred in refusing to charge the following written request of defendant, viz.: "I charge you that the act requiring toll bridges to be kept in repair, so as to answer the ends of their creation, fixes no standard of repair in which the bridge must be maintained; the only criterion is that the bridge can be used as a bridge under the terms of the statute authorizing its creation, and must not be allowed to become a nuisance across a stream or navigable water of this State"—whereas, it is submitted that this was a correct proposition of law applicable to this case.

22. That his Honor erred in refusing to charge the following written request of defendant, viz.: "The jury is instructed that if the bridge company kept its bridge in such shape that it could be used as a bridge by the general public for the purposes for which it was created, and yet was obliged to close same for such time as was necessary to make needed repairs, that it is not guilty of any crime either at common law or under the statutes of this State"—whereas, it is submitted that this was a correct proposition of law applicable to this case.

23. That his Honor erred in refusing to charge the following written request of defendant, viz.: "The statutes of this State specifically provide that where a bridge has been injured by freshets or otherwise that the bridge company shall have the right to establish a ferry, but the bridge company is not required to establish same, and the bridge company is required to commence repairs, within six months, and to finish same within two years. Section 2170, vol. I, Code 1912"—whereas, it is submitted that this was a correct proposition of law applicable to this case.

24. That his Honor erred in refusing a new trial and arrest of judgment, on the ground that section 618, Criminal Code 1912, contemplated an indictment based on information, and not a statutory indictment provided in the act of 1911, and that, even if said section should be construed as a whole, there is no one to whom the penalty can be paid; there being no informer of record in this case.

25. That his Honor erred in imposing a fine of $10,000; whereas, it is respectfully submitted that, in the light of the facts of the case, said fine was unwarranted, and excessive, and in violation of article I, sec. 19, of Constitution of 1895, prohibiting excessive fines.

26. That his Honor erred in imposing a fine of $10,000 on defendant in this case, when it is submitted that said fine was based on a misconception of the facts of the case, on

matters not appearing in the record or in testimony, and on ideas in the mind of the Circuit Judge not warranted by the actual facts of the case.

27. That his Honor erred in imposing a fine on defendant; whereas, it is submitted that section 618 of Criminal Code 1912, only authorizes a fine for offenses against owners of bridges, and there is no provision of law in this State authorizing a fine to be imposed upon the defendant for violating the terms of said section.

28. That his Honor erred in refusing the motion of defendant for continuance in this cause; whereas, it is respectfully submitted that, in view of the affidavit presented and other facts shown by the record, a sound discretion would have necessitated a continuance until the next term of the Court.

*Mr. H. L. Erckman,* for appellant, cites: *As to exceptions II, III. IV, V and VI:* Constitution of 1895, article III, sec. 17, Sixth Stats., p. 315; Act making the common law of England applicable to this country, Acts of 1868, 1873, 1892. *This act is not in the 1902 Code nor in the Code of 1912:* Code of 1912, vol. I, sec. 2830; Stats. 1919, p. 285; 28 S. C. 1. *As to exceptions I, VIII, XI, XII, XIII, XV, XVII, XVIII, XXI:* Blackstone, 4th Com., p. 167. *As to exceptions VII, XIX, XX, XXI, XXII, XXIII:* Sixth U. S. Statutes at Large, sec. 1150; 28 U. S. Statute at Large, sec. 363, Code of 1912, vol. I, sec. 2170. *As to the fine:* Exceptions XXIV, XXV, XXVI, XXVII; Constitution of 1895, article I, sec. 19.

*Messrs. Thomas P. Stoney, Solicitor,* and *Smythe & Visanska,* for respondent, cite: *As to exceptions 18, 11, 12, 13, 15, 16 and 21:* Crim. Code 1912, sections 635, 628, 615 and 618; Acts of 1919, p. 285; 76 N. W. (Mich.) 977; 45 N. W. (Iowa) 1042; 106 N. W. (Neb.) 221; 26 N. E. (Ind.) 42; 25 Atl. (Pa.) 147; 54 N. E. (Ohio) 1054; 132 N. W.

(Neb.) 722; 125 N. W. (Neb.) 722; 125 N. W. (Neb.) 1082; 14 Gray (Mass.) 242. *Exceptions 2 and 3:* Crim. Code 1912, sec. 618; Stats. at Large, vol. VI, p. 315; Gen. Stats. 1131-1132; Revised Stats. 354; 85 S. E. 234; 68 S. E. 561; Endlich on Stat. Inter., sec. 295. *As to exception 4:* Crim. Code 1912, sec. 135; Act of 24th February, 1912, satisfying the Code. *As to exceptions 5 and 6:* Crim. Code, sec. 83; 43 S. E. 658; 62 S. E. 311; 61 S. C. 1064; Act of March 13, 1919 (referred to in exception; Crim. Code 1912, sec. 618. *As to exceptions 7 and 20:* Vol. XXXII of the Opinions of the Attorney General, p. 312; 98 Atl. 472. *As to exception 9: The fine must be proportianate to the means of the party to be sentenced:* Blackstone. *As to exception 18:* Crim. Code 1912, sec. 618. *As to. exception 1919:* Sec. 2170, vol. I, of the Code has no bearing on the case. *As to exception 24:* Sec. 2832, of vol. I, Code 1912; Crim. Code 1912, sec. 618. *As to exception 28':* Supreme Court rule 5, Sec. 6; 60 S. E. 309.

December 22, 1919.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The defendant owns and operates a toll bridge across Ashley River, between the city of Charleston and St. Andrews parish, under and by virtue of the provisions of certain statutes. The defendant was indicted, tried, and convicted under section 618 of the Criminal Code, and sentenced to pay a fine of $10,000—one-half to go to the informer, and the other half to go to the Charleston Bridge Company. That section is as follows:

"The proprietor or proprietors of every bridge or turnpike road now constructed, or hereafter to be constructed by the authority of the legislature, shall be liable to indictment at common law for not keeping their respective works in such condition as to answer the ends of their creation.

All the penalties which may be recovered for offenses against owners of bridges or turnpikes shall be paid one-half to the informer and the other half to the corporation or individual or individuals owning the works respecting which the said offenses shall have been committed."

The defendant appealed upon numerous exceptions, which will be reported.

The first question which we will consider involves the construction of section 618 of the Criminal Code of 1912. The appellant's attorney, in his argument, says: "We contend that if this act (section 618) is of force and applicable, that its true construction as a penal statute is to punish only when a bridge is in such a condition as practically not to be a bridge, and becomes a nuisance across a navigable stream, or highway. His Honor, however, took the position 'that not only must the bridge answer the ends of its creation, but it should accommodate itself to the growing demands of modern traffic, or surrender its charter, and, failing to do so, it was guilty of a criminal offense.' "

The appellant's attorney did not cite any authorities to sustain the proposition for which he contends, but the solicitor and the respondent's attorneys have cited numerous cases, which show that the foregoing exceptions cannot be sustained.

The cases of *Park v. Laurens Cotton Mills,* 75 S. C. 560, 56 S. E. 234, and *Nexsen v. Ward,* 96 S. C. 313, 80 S. E. 599, show that the second exception cannot be sustained

The next question that will be considered is whether the common law is of force in this State, on the ground that the following statute, which was first adopted in 1712 (Rev. St. 1872c, 146, sec. 10), is not included in the Code of Laws of 1912: "All and every part of the common law of England, where the same is not altered by this act or inconsistent with the Constitution, customs

and laws of this State, is hereby continued in full force and virtue within this State in the same manner as before the adoption of this act."

In the first place, the provision in section 618, that proprietors of turnpike roads shall be liable to indictment at common law, shows clearly that it is applicable to the present case; and, in the second place, the statute, making the common law of force in this State, is merely declaratory in its nature. In the case of *Shecut v. McDowel,* 1 Tread. Const. 35, the principle is thus correctly stated by Nott, J.:

"The first question * * * is whether * * * this Court is to be governed by the principles of the common law, as settled in England. * * * As to the first point, our act of Assembly, passed in the year 1712, says the common law of England shall be in as full force and virtue in this State as in England. And, even if it did not, I do not know by what other law we should be governed; for the common law is as much the law of this country as of England. I do not mean to say that we are bound by every decision made by the Courts of England. We have a right to take our own view of the common law."

We proceed to the consideration of the question whether the sentence imposed upon the defendant was illegal. The two paragraphs in section 618 were first made a part of a lengthy act, adopted in 1827. 7 St. at Large, p. 315. They did not therein appear as a single section. The first provision in the section 618, as it appeared in the act of 1827, included the words: "In the same manner as if no provisions were contained in this act to enforce them."

And the second provision was as follows:

"And be it further enacted, That all penalties which may be recovered for offenses created by this act, shall be paid one-half to the informer, and the other half to the corpora-

tion or individual or individuals owning the works respecting which the said offenses shall have been committed."

These provisions were re-enacted as separate sections in the Revised Statutes of 1873 (page 282, secs. 21 and 22; also in the General Statutes of 1882 (page 335, secs. 1131 and 1132). But they were incorporated in the Revised Statutes of 1893 (page 382, sec. 354) and in the Code of Laws of 1902 (page 379, sec. 443) as a single section. Section 105 of the Criminal Code of 1912, is as follows:

"In cases of legal conviction, where no punishment is provided by statute, the Court shall award such sentence as is conformable to the common usage and practice in this State, according to the nature of the offense, and not repugnant to the Constitution."

The defendant was convicted of an offense committed by him, and the sentence imposed on him was for an offense against the owners of the bridge, which he had not committed. Therefore, the Court did not award such sentence as was conformable to the common usage and practice in this State, according to the nature of the offense. The sentence was, therefore, illegal.

There was no prejudicial error assigned by the other exceptions.

The judgment of this Conrt is that the judgmeut pronounced be reversed, and the cause remanded to that Court for the pronouncement of a sentence pursuant to section 105 of the Criminal Code of 1912 in conformity to the usage and practice of this State.