17939

Amorite L. PAGE Appellant, v. Joseph E. WINTER and
Mary W. Winter, Respondents

(126 S. E. (2d) 570)

*Messrs. Seigler & Seigler,* of Columbia, *for Appellant,*

*Messrs. Nelson, Mullins, Grier & Scarborough,* of Columbia, *for Respondents,* 

June 28, 1962.

LEGGE, Acting Justice.

Appellant brought this action to recover damages for loss of consortium resulting from personal injuries alleged to have been inflicted upon her husband through the negligent operation of an automobile owned by one of the respondents and being driven at the time by the other. Respondents demurred to the complaint upon the ground that it stated no cause of action recognized or existing under the laws of this state. Appeal is from an order sustaining the demurrer.

Recovery by the wife for loss of consortium resulting from negligent misconduct of a third person was not permitted at common law. 27 Am. Jur., Husband and Wife, Sections 513, 514; 41 C. J. S., Husband and Wife, § 404. In *Hitaffer v. Argonne Co.* (1950), 87 App. D. C. 57, 183 F. (2d) 811, 23 A. L. R. (2d) 1366, the court, acknowledging the existence of this rule and unanimous adherence to it in every jurisdiction in this country in which it had been challenged, repudiated it as unjust, founded on specious reasoning, and demonstrably undesirable. That decision is a forceful and appealing argument against the discriminatory rule of the common law which in negligence cases permits one spouse to recover for loss of consortium but denies that right to the other. It has been reviewed by the courts of many states. A small minority have followed its

doctrine; most have refused to do so for the same reason that compels our rejection of it: that it is the function of the legislature, not the courts, to make, amend or repeal laws. *Cf. Ripley v. Ewell* (Fla. 1952), 61 So. (2d) 420; *Nickel v. Hardware Mutual Casualty Co.* (1955), 269 Wis. 647, 70 N. W. (2d) 205; *Coastal Tank Lines v. Canoles* (1955), 207 Md. 37, 113 A. (2d) 82; *Deshotel v. Atchison, T. & S. F. R. Co.* (1958), 50 Cal. (2d) 664, 328 P. (2d) 449; *Smith v. United Construction Workers* (1960), 271 Ala. 42, 122 So. (2d) 153.

■ It is not for this court to repudiate the common law rule because we may think it illogical or undesirable. We do not have the right "to repeal, alter, modify, or change the law of the land, even when it plainly appears that the law in force may be wrong." *O'Hagan v. Fraternal Aid Union,* 144 S. C. 84, 141 S. E. 893, 57 A. L. R. 397.

■ Appellant presses here the same argument that the court made in *Hitaffer v. Argonne Co., supra, viz.*: that the right of the wife to maintain an action such as this for loss of consortium existed at common law, her inability to assert it being due to the disability of coverture; and that the passage of the Married Women's Property Act simply removed that disability, thus rendering available to her a right that had always existed. We find ourselves unable to agree with this contention. If such a right had existed under the common law the wife could have maintained the action prior to the Married Women's Property Act by simple joinder of the husband. *Best v. Samuel Fox & Co.* (England, 1951), 2 K. B. 639, as quoted in *Coastal Tank Lines v. Canoles, supra.*

Since there has been no legislative action in this state relating to the matter, we must be governed by the policy of the common law, which denies to the wife the right to maintain an action, based on negligence, for loss of consortium.

■ "It is often the function of the courts by their judgments to establish public policy where none on the subject exists. But overthrow by the courts of exist-

ing public policy is quite another matter. That its establishment may have resulted from decisional, rather than statutory, law, is in our opinion, immaterial. Once firmly rooted, such policy becomes in effect a rule of conduct or of property within the state. In the exercise of proper judicial self-restraint, the courts should leave it to the people, through their elected representatives in the General Assembly, to say whether or not it should be revised or discarded." *Rogers v. Florence Printing Co.*, 233 S. C. 567, 106 S. E. (2d) 258.

Affirmed.

TAYLOR, C. J., and MOSS, J.., concur.

LEWIS and BUSSEY, JJ., dissent.

BUSSEY, Justice (dissenting).

I regret that I cannot concur in the opinion prepared by Mr. Justice Legge in this case, and as the issue presented on appeal is one of great importance, I feel obligated to state my views thereabout.

The complaint in this action alleges that as a result of the gross negligence, willfulness and wantonness of the defendants, the husband of the plaintiff was seriously and permanently injured causing him to be totally disabled, and that the husband's incapacity is of a permanent nature, as a result of which the plaintiff has been deprived of the consortium of her husband, including his assistance and aid in maintaining and supporting the household and has been deprived of his society, comfort, companionship and husbandly affection, and his help in the care and management of their three minor children, for which damages to her right of consortium she seeks to recover. Respondents demurred to the complaint upon the ground that it stated no cause of action recognized or existing under the laws of this State, and the appeal here is from the order sustaining the demurrer.

It is well settled in this State that a wife, in at least some instances, is entitled to recover damages arising from an intentional violation of her right to the consortium of her hus-

band. Simply stated, the issue raised by this appeal is whether a wife has the right to recover for the tortious, though not intentional, invasion of the same right.

It is, of course, not the function of this court to make, amend or repeal laws, that function being left to the legislature, and I would not knowingly be a party to the usurpation of the legislative power by this court.

The question before us is not whether this court shall legislate, but whether the complaint alleges a cause of action under the existing law of the State of South Carolina. To merely state that there is neither a specific statute authorizing, nor a common law case precedent allowing a recovery by the wife in a case such as this, is not at all determinative of the question. It is often asserted, without the citation of any authority that the common law of England denied the right of recovery to a wife in such a case. No case has been cited and research on my part has not found a case from the English courts which has even passed upon the issue, let alone decided it, one way or the other, in whole or in part, until the decision in *Best v. Samuel Fox & Co.* (England, 1952) 2 K. B. 639, which will hereinafter be more fully discussed.

A number of American courts have considered the precise issue before us and, prior to the year 1950, it is clear that the weight of American authority was against the contention of the appellant here. Such American authority, however, is at most only persuasive authority to be weighed and considered by this court, if we need to resort to persuasive authority to determine the issue herein. In my view, we do not need to resort to persuasive authority and can well decide the issue before us strictly on the existing law in South Carolina.

Admittedly, we are without the benefit of any precise precedent laid down by this court, and we are without the benefit of any statute which specifically grants or prohibits to the wife a cause of action for the loss of constortium of her hus-

band, under the facts and circumstances alleged in the complaint.

In arriving at a correct conclusion, we have to consider not only the precedents but the principles of the common law, the effect, if any, of our Constitution, and statutes on the common law of England, and of course the previous decisions of this court. When all of these are considered together, I cannot help but arrive at the conclusion that the complaint here states a cause of action under the existing law of South Carolina, and that the demurrer should have been overruled.

In defining the common law it is stated in 11 Am. Jur. 154:

"It is the system of rules and regulations of principles from which our judicial ideas and legal definitions are derived. The common law is not a codification of exact or inflexible rules for human conduct, for the redress of injuries, or for protection against wrongs; on the contrary, it is the embodiment of broad and comprehensive unwritten principles, inspired by natural reason and an inmate sense of justice, and adopted by common consent for the regulation and government of the affairs of men. Its development has been determined by the social needs of the community which it serves. In other words, the common law is the legal embodiment of practical sense. It is a comprehensive enumeration of principles sufficiently elastic to meet the social development of the people. Its guiding star has always been the rule of right and wrong, and in this country its principles demonstrate that there is in fact, as well as in theory, a remedy for all wrongs. The capacity of common law for growth and adaptation to new conditions is one of its most admirable features. It is constantly expanding and developing in keeping with advancing civilization and the new conditions and progress of society and adapting itself to the gradual change of trade, commerce, arts, inventions, and the needs of the country. Whenever an old rule is found unsuited to present conditions or unsound, it should be set aside and a rule

declared which is in harmony with those conditions and meets the demands of justice."

In 1712 this State (Rev. St. 1872, c. 146, Sec. 10) adopted the principles of the common law of England in the following language:

"All and every part of the common law of England, where the same is not altered by this act or inconsistent with the Constitution, customs and laws of this state, is hereby continued in full force and virtue within this state in the same manner as before the adoption of this act."

In construing this statute, this court, in the case of *State v. Charleston Bridge Co.* (1919), 113 S. C. 116, 101 S. E. 657, said:

"* * * the statute, making the common law of force in this state, is merely declaratory in its nature. In the case of *Shecut v. McDowel,* 1 Tread. Const. 35, the principle is thus correctly stated by Nott, J.: 'The first question * * * is whether * * * this court is to be governed by the principles of the common law, as settled in England. * * * As to the first point, our act of assembly, passed in the year 1712, says the common law of England shall be in as full force and virtue in this state as in England. And, even if it did not, I do not know by what other law we should be governed; for the common law is as much the law of this country as of England. I do not mean to say that we are bound by every decision made by the courts of England. We have a right to take our own view of the common law.' "

During the middle nineteenth century various English speaking jurisdictions, by both constitutional and statutory provisions, commenced the emancipation of married women from the shackles imposed upon them by the common law theory that husband and wife were one in the eyes of the law and that the husband was the superior of the wife to the extent that the husand was almost entirely dominant. The novelty of this idea of emancipation gave rise in various jurisdictions to many questions as to the extent of her eman-

cipation, and even to this day some questions thereabout still arise. Existing doubt as to the extent of her emancipation is, at least in part, responsible for the rule and the variety of reasons given therefor, which grew up in most American jurisdictions prior to 1950, to the effect that a wife could not recover for loss of consortium in a case such as this.

Like other courts, this court had difficulty with these problems and questions, and as late as 1920 it was seriously contended that a wife had no cause of action against her husband for damages for assault and battery, on the theory that no such action existed at common law. *Prosser v. Prosser,* 114 S. C. 45, 102 S. E. 787. This court, however, held that she did have such a cause of action.

Contrary to the reasoning in some other jurisdictions, in determining whether a married woman has a cause of action under the law of this state, this court has always gone to and followed the basic principles of the common law, and has not allowed itself to be hamstrung because no case could be cited from the English courts as a precise precedent. Unless we depart from well established policy in this state, we have to determine this case under the principles of the common law as modified and construed in this state, rather than upon the issue of the absence of any precise precedent from England.

It is the boast and a primary principle of the common law that there can be no wrong without a remedy. This court has, of course, on many occasions been called upon to consider just what constitutes a cause of action. An excellent discussion is contained in the case of *Holcombe v. Garland & Denwiddie,* 162 S. C. 379, 160 S. E. 881, from which I quote:

"We will use freely appellant's brief and the authorities there cited.

"What constitutes a cause of action?

" 'Every judicial action must, therefore, involve the following elements; a primary right possessed by the plaintiff

and a corresponding primary duty devolving upon the defendant; a delict or wrong done by the defendant which consisted in a breach of such primary right and duty; a remedial right in favor of the plaintiff, and a remedial duty resting upon the defendant springing from this delict, and finally the remedy or relief itself.

" 'Every action however complicated or however simple must contain these essential elements. Of these elements, *the primary right and duty and the delict or wrong, combined, constitute the cause of action in the legal sense of the term, and as it is used in the codes of the several States.'* Pomeroy's Code Remedies (4th Ed.) § 47, page 460.

" 'The cause of action is the right claimed or the wrong suffered by the plaintiff on the one hand, and the duty or delict of defendant on the other.' *Hayes v. Clinkscales,* 9 S. C. [441], 450; *Rodgers v. Mutual, etc. Ass'n,* 17 S. C. 406-410; *Columbia Nat. Bank v. Rizer,* 153 S. C. [43], 55, 150 S. E. 316, 68 A. L. R. 443."

In recognition and application of the foregoing principles this court (in 1909) in the case of *Messervy v. Messervy,* 82 S. C. 559, 64 S. E. 753, held that a wife had a cause of action for the wrongful enticement of her husband which deprived her of his comfort, society and aid. This court relied in part on the case of *Bennett v. Bennett* (1889), 116 N. Y. 584, 23 N. E. 17, 6 L. R. A. 553, in which the court said:

"The actual injury to the wife from loss of consortium, which is the basis of the action, is the same as the actual injury to the husband from that cause. His right to the conjugal society of his wife is no greater than her right to the conjugal society of her husband. Marriage gives to each the same rights in that regard. Each is entitled to the comfort, companionship, and affection of the other. The rights of the one and the obligations of the other spring from the marriage contract, are mutual in character, and attach to the husband as husband, and to the wife as wife. Any interference with these rights, whether of the husband or of the wife, is a

violation, not only of natural right, but also of a legal right, arising out of the marriage relation. * * * As the wrongs of the wife are the same in principle, and are caused by acts of the same nature as those of the husband, the remedy should be the same."

The conclusion of this court in the *Messervy case* that the wife had a right to the consortium of her husband, and in keeping with the principles of the common law was entitled to the protection thereof, is fully supported by many authorities. In the case of *Eliason v. Draper* (Del., 1910) 2 Boyce 1, 77 A. 572, the court had the following to say:

"The right of the wife to the consortium of the husband was likewise recognized at common law as an existing right of the married woman, though a right of action for its invasion was denied her because of the common-law doctrine of identity of person and its consequent trammels of technical procedure. Nevertheless her right existed, and its existence was recognized and enforced by the ecclesiastical courts in a suit by her for the restitution of conjugal rights, where in defense nothing less than conduct which would be sufficient to entitle the respondent to a judicial separation was a bar to the relief sought. 3 Blac. Com. 94; *Orme v. Orme,* 2 Addams Eccl. Rep. 382; 1 Bishop, M., D & S., §§ 69, 1357; *Burrows v. Burrows,* 2 Swabey & T. 303. 'This recognition by the common law of the fact that the loss of consortium was an injury to the wife, and that its enforcement was her right, and the corresponding failure, on the other hand, to provide her with a legal remedy for the tort, is properly definitive of her status at common law, and places this branch of legal learning on its proper footing. That the common-law courts failed to find a remedy is, under the decisions, rather a recognition of the right, than a denial of its existence. For it may be said that the history of common-law procedure is largely the history of substantive rights, remediless at first for lack of a suitable writ or precedent in the Registrum Brevium, until the persistence of the demand for a remedy developed the action of trespass on the case as a general

specific *in consimili casu,* under the provisions of the statute of Westminster II.' *Sims v. Sims* ([79] N. J. [Law 577]), 76 A. 1063.

\* \* \*

"The pronounced weight of authority in this country supports the proposition that the right to the consortium of the husband was recognized at common law as a right inherent in the wife, though not then enforceable in an action at law because of the conflict in the rules of procedure and the policy of the times."

Of course, the *Messervy case* involved an intentional wrong, but the point is that this court has now repeatedly recognized that the wife has the right to the comfort, society and aid of her husband. *Holloway v. Holloway,* 204 S. C. 565, 30 S. E. (2d) 596. In other words, her right to consortium is a legal right which this court should and will protect against a legal wrong. The wife having the legal right to the consortium of her husband is fully entitled to its protection against the wrongful and unlawful invasion of this right, regardless of whether the tortious invasion thereof is intentional (as alleged in the *Messervy case*) or is negligent, willful and wanton (as alleged in this case). The damage to the right of the wife is just as real and just as grave in one case as in the other, and the manner of its unlawful invasion cannot possibly make any logical difference, except with respect to the nature of damages which might be recovered.

The case of *Prosser v. Prosser, supra,* contains an interesting and informative discussion of the constitutional and statutory provisions by which the emancipation of married women was effected. The court pointed out that neither the Constitution of 1868, nor that of 1895, nor the statutes enacted pursuant thereto, by so many words gave to a married woman the power "to sue", but that the Code of Procedure enacted in 1870 provided comprehensive "remedies" for the redress of wrongs.

With respect to the Code of Procedure the court stressed the following; that it defined an action as a proceeding, amongst other things, to redress a private wrong (1952 Code Sections 10-8, 10-9); that an action shall be prosecuted by the real party in interest (1952 Code Section 10-207); and that by necessary implication it provided that a married woman might sue. The court further pointed out the provision of the Code (now Section 10-1 of the 1952 Code) which reads as follows:

"The rule of common law that statutes in derogation of that law are to be strictly construed has no application to this Title."

The court then went on to say "the necessary inference is that by a liberal and not by a strict construction the Code of Procedure was enacted to give the wife every remedy against her husband for any wrong she might suffer at his hands." It follows that a liberal construction of the Code of Procedure was to give a wife every remedy for any wrong she might suffer at the hands of any persons, not just her husband.

Not mentioned in the opinion in the *Prosser case* is the provision of the 1870 Code of Procedure (now, in part, Sec. 10-13 of the 1952 Code) which original section in its entirety reads as follows:

"Sec. 903. Inconsistent Statutory Provisions Repealed.— All statutory provisions inconsistent with the Code of Procedure are repealed; but this repeal shall not revive a statute or law which may have been repealed or abolished by the provisions hereby repealed. And all rights of action given or secured by existing laws may be prosecuted in the manner provided by this Code of Procedure. If a case shall arise in which an action for the enforcement or protection of a right, or the redress or prevention of a wrong, cannot be had under this Code of Procedure, the practice heretofore in use may be adopted so far as may be necessary to prevent a failure of justice."

The foregoing section simply emphasizes that it was the intention of the legislature by the enactment of the Code of Procedure to provide comprehensive remedies for the redress of private wrongs suffered by all persons, including married women.

The case of *O'Hagan v. Fraternal Aid Union,* 144 S. C. 84, 141 S. E. 893, 57 A. L. R. 397, relied upon by the respondents and cited in the opinion of Mr. Justice Blease, is, in my view, not at all in point, but the principles enunciated therein support here the contention of the appellant rather than the contention of the respondents. The opinion in that case contains the following language:

"There is no statute in our state relating to the matter under consideration.. Where there has been no legislative action, we must look back to the common law, for the principles of the law there stated are of force in this state, until there has been some repeal or modification thereof by the law-making body."

Under the facts in that case there was no allegation of any right on the part of the plaintiff; no allegation of any legal duty on the part of anyone, and no allegation of any violation of a legal right or the commission of a legal wrong. Of course, the court could not by judicial fiat legislate a right or a duty, and the decision therein followed the principles of the common law. To the contrary, we have here the legal right of the wife to the consortium of her husband, the duty by the defendants to use due care, and the violation or invasion of the right of the plaintiff by the alleged negligent, willful and wanton conduct of the defendants. Under these circumstances, relief to the plaintiff is in strict keeping with the principles of the common law; in keeping with our constitutional and statutory provisions, and thoroughly in keeping with the prior decisions of this court.

If we needed to go to the decisions of other courts and consider persuasive authority, the better reasoned and more logical opinions of other jurisdictions support our decision

here. Probably the leading case from other jurisdictions is that of *Hitaffer v. Argonne Co.*, 87 App. D. C. 57, 183 F. (2d) 811 (1950). Since the decision of that case, the opinion therein has been reviewed by the courts of many states and in a number of jurisdictions that case has been followed. Among the better reasoned and more comprehensive decisions are the case of *Hoekstra v. Helgeland*, 78 S. D. 82, 98 N. W. (2d) 669, and *Missouri Pacific Transportation Co. v. Miller*, 227 Ark. 351, 299 S. W. (2d) 41. Other decisions following the *Hitaffer case* are: *Yonner v. Adams* (Del. 1961), 167 A. (2d) 717; *Cooney v. Moomaw*, D. C., 109 F. Supp. 448; *Brown v. Georgia-Tennessee Coaches*, 88 Ga., App. 519, 77 S. E. (2d) 24; *Gordy v. Powell*, 95 Ga. App. 822, 99 S. E. (2d) 313; *Bailey v. Wilson*, 100 Ga. App. 405, 111 S. E. (2d) 106; *Dini v. Naiditch* (1960), 20 Ill. (2d) 406, 170 N. E. (2d) 881; *Acuff v. Schmit*, 248 Iowa 272, 78 N. W. (2d) 480; *Lampe v. Lagomarcino-Grupe Co.*, 251 Iowa 204, 100 N. W. (2d) 1; *Montgomery v. Stephan*, 359 Mich. 33, 101 N. W. (2d) 227.

It is quite true, as pointed out by Mr. Justice Legge, that many jurisdictions have refused to follow the Hitaffer decision, but I do not agree with him as to the reason for their refusal. It seems to me that a majority of the jurisdictions which refuse to recognize the logic of the Hitaffer decision have refused to do so primarily for the reason that such would require the overruling of precedents well established in those jurisdictions during the days when the courts were still wrestling with the question concerning the degree of emancipation of married women. At least some of these decisions recognize that in the absence of a firm precedent from the particular jurisdiction the view of the court might be otherwise. At least several courts have refused to follow the *Hitaffer case* for the primary reason that the husband has no right in those jurisdictions to recover for the loss of consortium of his wife and, therefore, to extend to the wife a right which the husband does not have would be anomalous. Of course, the right of the husband to recover is well estab-

lished in this jurisdiction. *Cook v. Atlantic Coast Line R. Co.,* 196 S. C. 230, 13 S. E. (2d) 1, 133 A. L. R. 1144; *Vernon v. Atlantic Coast Line R. Co.,* 218 S. C. 402, 63 S. E. (2d) 53.

Prior precedent was the primary basis for the holding of the Maryland court in *Coastal Tank Lines v. Canoles,* 113 A. (2d) 82, in which case the court quoted from *Best v. Samuel Fox & Co., supra.* In view of the several opinions filed in the *Best case,* it is difficult to determine just what the court held, except that the wife was not allowed to recover.

However, since said case has been often mentioned and is here strongly relied upon by the respondents, it might not be amiss to briefly discuss the same. The facts were that Mr. Best, while occupying the status of an invitee, was injured by the negligence of the defendant and recovered damages. As a result of his injuries Mr. Best was rendered sexually impotent and Mrs. Best sought to recover damages for the loss of consortium, her claim being based solely on the damages arising to her as a result of the sexual impotence of Mr. Best, no other element of damage being alleged.

The Court of Appeals, in three separate opinions, held that the wife could not recover on the ground that consortium is one and indivisible and that the wife had not lost it as a whole, although there was a diversity of opinion among the three jurists as to whether she could recover if she had lost the consortium of her husband as a whole.

On appeal from the decision of the Court of Appeals, the five Lords participating all agreed that the appeal should be dismissed, but were far from unanimous in their reasons why. In brief, it is clear that there is a difference of opinion among English jurists as to whether a woman may recover in the event of a total loss of consortium of her husband, and as a precedent the case goes no farther than holding that Mrs. Best could not recover for the element of consortium there lost, under the factual circumstances alleged.

It might not be amiss to point out that no State in the Union has been more ardent, as a matter of public policy, in protecting marriage as an institution, together with all of the reciprocal rights and duties of both husband and wife, than has the State of South Carolina. To deny the wife the right to recover under the circumstances alleged would not be in keeping with the fundamental policies and customs of this State, and would, since the husband is allowed to recover, deny to the wife equal protection of the law.

Briefly stated, the wife has alleged a cause of action here under the existing law of our State because she has the right to the consortium of her husband recognized at common law and under the previous decisions of this court; the defendants had the duty to exercise due care, it being alleged that there was a delict on the part of the defendants in that duty, making them liable for all of the damages which are naturally the proximate consequence of the alleged wrongful acts.

Since the language of the complaint with reference to the damages allegedly sustained by the plaintiff is rather broad, it should here be pointed out that the plaintiff in an action for the loss or impairment of the consortium of her husband is not entitled to recover for any element of damage involving her financial support or the financial support of their children as such elements, if recoverable, are embodied and contained within the husband's cause of action, and to allow the wife to recover therefor would be to allow a double recovery.

The decision of the lower court should be reversed and the case remanded.