James A. WILKIE, Plaintiff,

v.

**HOME SECURITY LIFE INSURANCE COMPANY, Defendant.**

Civ. A. No. 79–1559.

United States District Court,
D. South Carolina,
Columbia Division.

May 2, 1981.

J. Dennis Bolt, Columbia, S. C., for plaintiff.

James M. Brailsford, III, Robinson, McFadden, Moore, Pope & Stubbs, Columbia, S. C., for defendant.

## ORDER

CHAPMAN, District Judge.

This matter is before the Court upon defendant's motion to dismiss one of two causes of action pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. Should the Court dismiss this cause of action for failure to state a claim upon which relief can be granted, the sum in controversy falls below the minimum jurisdictional amount required by 28 U.S.C. § 1332. Granting the 12(b)(6) motion would, therefore, have the effect of dismissing the entire action.

Plaintiff, a South Carolina resident, brought this action based on diversity of citizenship, claiming actual and punitive damages for defendant's alleged breach of an insurance contract. The policy of disability insurance was in effect on February 27, 1979, when plaintiff suffered a stroke. He filed a disability claim with the defendant on March 24, 1979, and subsequently received one payment in the amount of $223.38 pursuant to the policy's terms. Following this payment, however, the defendant denied coverage under the policy, and demanded return of the initial payment; plaintiff responded by instituting this action.

Two causes of action are alleged in the complaint. The first is a contract claim, and alleges plaintiff's entitlement under the policy to monthly payments of $223.38 during the term of his disability, to a maximum of thirty-six months.

The second cause of action forms the basis of defendant's motion to dismiss. The defendant contends that the second cause of action, one for tortious breach of the insurer's duty of good faith and fair dealing, should be dismissed because it has not been, and would not be, recognized in the courts of this state.

 It is the duty of this Court, when presented with the question of substantive law in a diversity case, to determine what the state law is. When state law is uncertain, it is the Federal Court's function to determine what the State Court would decide if presented with the same issue. The Federal Court's function is "not to choose the rule that it would adopt for itself, if free to do so, but to choose the rule that it believes the state court, from all that is known about its methods of reaching decisions, is likely in the future to adopt." Wright on Federal Courts at 240 (footnote omitted). With this in mind the Court will now examine the issue.

To advance his argument that this cause of action would be accepted by the South

Carolina courts, the plaintiff relies upon a recent federal decision, *Robertsen v. State Farm Mutual Auto Insurance Company*, 464 F.Supp. 876 (D.S.C.1979) (Blatt, J.). In *Robertsen*, Judge Blatt found that "the South Carolina Supreme Court would recognize a cause of action for bad faith—unreasonable refusal to pay first party insurance benefits . . . ." 464 F.Supp. at 883. This Court is not convinced, however, that *Robertsen* is determinative of the issue in the instant case.

At the outset, it is important to understand that this Court is not absolutely bound by Judge Blatt's determination in *Robertsen*. While this Court might find his opinion highly persuasive on the issue, "a District Court decision which has not stood the acid test of appellate review cannot be regarded as authoritative, much less dispositive . . . ." *Bank of Marin v. England*, 352 F.2d 186, 189, n.1 (9th Cir. 1965), *reversed on other grounds*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966). District Courts of this state are frequently called upon, however, to decide important questions of South Carolina law upon which the South Carolina Supreme Court has not passed. In the interest of uniformity of decision, when one of this Court's members decides a new legal question after thorough consideration, the other judges give great weight to the decision until the courts of South Carolina authoritatively decide the question the other way. But the members are not bound thereby. See, *e. g.*, *Childers v. Southern Farm Bureau Casualty Insurance Company*, 282 F.Supp. 866 (D.Ark.1968).

The facts of *Robertsen* are similar to those in this case. Were the analogy closer, Judge Blatt's earlier decision would be followed. There are, however, crucial distinctions that convince this Court that *Robertsen* is not determinative of the issue.

*Robertsen* involved first party automobile personal injury protection coverage ("PIP"). Although it is now optional, at the time of Judge Blatt's order, February 12, 1979, PIP coverage was still mandatory. S.C.Code Ann. § 56–11–110 (1976), *as amended by* Act No. 88, [1979] S.C. Acts and Joint Resolutions 166–67 (effective June 1, 1979), *codified at* S.C.Code Ann. § 56–11–110 (1979 Cum.Supp.) The coverage at issue is not mandatory, but is purely voluntary, being based not upon a statutory requirement, but purely upon a contract between the parties. It is with the mandatory nature of PIP in mind that the Court will now turn to the crucial points that distinguish *Robertsen* from the case at hand.

The South Carolina Supreme Court has been liberal in vigorously protecting the rights of consumers, particularly *vis-a-vis* insurance companies. However, the judicial protection of the legally recognized rights, and a courts' creation of new rights are entirely different concepts. When urged to create new rights, the South Carolina Supreme Court has usually insisted that the creation of such rights is the function of the legislature, not the courts. In *Robertsen* the Court was seeking to protect private rights in insurance coverage required by an act of the General Assembly. The present plaintiff would extend this rationale to find that the state court would create a new right under a voluntary contract of disability insurance. This Court cannot agree, and will not so extend *Robertsen*.[1]

The difference between the protection of legally recognized rights and the creation of new ones has been addressed by the South Carolina Supreme Court on a number of occasions. In *Page v. Winter*, 240 S.C. 516, 126 S.E.2d 570 (1962), for example the South Carolina court was urged to adopt a new cause of action that would give married women the same right to sue for loss of consortium as was enjoyed by married men under the existing law. While impliedly recognizing the desirability of the new cause of action, the Court held, as it so often has, "that it is the function of the legislature, not the courts, to make, amend,

---

1. As the instant case involves disability insurance, it is expressly excluded from Judge Blatt's decision. In his Order, he specifically noted that his case presented only the question of the adoption of a new cause of action concerning PIP coverage, and would not necessarily extend to health, disability, life, and property insurance policies. 464 F.Supp. at 881, n.5.

or repeal laws." 240 S.C. at 518, 126 S.E.2d 570. Similarly, in *Smith v. Holt, Rinehart and Winston, Inc.,* 270 S.C. 446, 242 S.E.2d 548 (1978), the Court was urged to follow the lead of several other jurisdictions in adopting a newly developed cause of action for tortious interference with a prospective advantage. While acknowledging that the cause of action had been advocated by Professor Prosser and the Restatement, and had been adopted by other jurisdictions, the Court remarked:

> Despite authority, we decline to recognize such a claim by judicial fiat .... If an action for tortious interference with prospective advantage or prospective contractual relations is to become the law in this State, it should be by legislative enactment. 270 S.C. at 450, 242 S.E.2d 548.

Thus, in predicting the development of South Carolina law, there is a clear distinction between the protection of existing personal rights, and the creation of new personal rights. In the former, the Court may be in the vanguard of the law as stated by Judge Blatt, but in the latter, the Court insists upon adhering to its proper judicial function and leaving such changes to the General Assembly.

Furthermore, as detailed in Judge Blatt's opinion, the General Assembly of South Carolina has already created rights in this area. The plaintiff's claimed new cause of action is intended to give the plaintiff the right to sue for "bad faith, unreasonable" denial of an insurance claim. In South Carolina Code § 38–9–320 (1976), the General Assembly has given the plaintiff the right to attorney's fees in the event that the denial of a claim is shown to be unreasonable or in bad faith. If the legislature had wanted to extend plaintiff's rights further, it could easily have done so.

■ Remedies abound for a South Carolina plaintiff who is treated unfairly by his insurance company. He may sue on the contract. He may collect attorney's fees if the breach of contract was in bad faith or unreasonable. He may sue for and collect punitive damages if the breach of contract was accompanied by a fraudulent act. And he may invoke various criminal administrative penalties and procedures provided by statutes that regulate the insurance industry. It is hard to imagine that the South Carolina Supreme Court would perceive a void in protecting the consumer that would necessitate a departure from its philosophy that the making of new law falls within the legislative province.

■ The plaintiff's reliance on the *Tiger River* doctrine is misplaced. This doctrine, arising out of the case of *Tiger River Pine Co. v. Maryland Casualty Company,* 163 S.C. 229, 161 S.E. 491 (1931), provides that where an insurer has by contract reserved unto itself the exclusive right and duty to defend, compromise, or try a law suit on behalf of the insured, the insurer may be liable to its insured in tort for its negligent or bad faith handling of the defense, compromise, or trial of the action if its acts result in subjecting the insured to a judgment in excess of the liability limits provided by the contract. Plaintiff claims it is but a short step from the *Tiger River* doctrine to the adoption of the new cause of action urged upon this Court today. There is, however, a sharp distinction between the two concepts, and this distinction was recently recognized by the Supreme Court of Oregon;

> Plaintiff seeks to have this court recognize a cause of action for tortious breach of an insurer's duty of 'good faith and fair dealing' when dealing with its insured. This is a distinct tort which has recently emerged in California and has subsequently found favor in some other jurisdictions. See *Silberg v. California Life Ins. Co.,* 11 Cal.3d 452, 113 Cal.Rptr. 711, 521 P.2d 1103 (1974); *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973); *Fletcher v. Western National Life Ins.,* 10 Cal.App.3d 376, 89 Cal.Rptr. 78, 47 A.L.R.3d 286 (1970).

> This tort developed as an outgrowth of the cause of action for an insurer's bad faith refusal to settle within the coverage limits of a liability insurance policy. See, e. g., *Groce v. Fidelity General Insurance,*

252 Or. 296, 448 P.2d 554 (1969); *Radcliffe v. Frankling Nat'l Ins. Co.*, 208 Or. 1, 298 P.2d 1002 (1956). However, although the two situations are somewhat similar, there is a distinct difference between liability insurance and other types of policies which should not be overlooked.

When an insured purchases liability insurance, he relinquishes his right to control any litigation brought against him for conduct which is covered under the policy, and he loses his right to negotiate a settlement with the opposing party. Moreover, when the settlement value of a case approaches the policy limits, it becomes increasingly more tempting for the insurer to gamble on the results of litigation, for in refusing to settle under such circumstances, the insurer stands to lose little and gain much. The insured, however, has a strong interest in settlement so as to avoid a judgment in excess of his coverage. Because of this conflict, courts have held insurers to a high duty of good faith and fair dealing when conducting settlement negotiations on behalf of their insured.

Such considerations are not applicable outside the field of liability insurance. In cases involving the insurer's duty to pay under policies for theft, fire, health, disability or life insurance, the unique relationship which gives rise to the special duty of liability insurers to attempt to settle within their policy limits does not arise. The insured, or his beneficiary, is not subject to the imposition of excess liability, and his rights and responsibilities are limited to those set forth in his contract.

*Farris v. U. S. F. & G.*, 284 Or. 453, 587 P.2d 1015 (1978), *quoting from Santilli v. State Farm Ins. Co.*, 278 Or. 53, 562 P.2d 965 (1977)

■ Based on the facts of this case, it is clear that the South Carolina Supreme Court would not adopt the cause of action envisioned by the plaintiff. Accordingly, the second cause of action is dismissed under Rule 12(b)(6) for failure to state a claim

upon which relief can be granted. The remaining contract claim, if plaintiff is successful, can be for a maximum of $8,038.08. This sum falls far short of the jurisdictional amount required in the United States Courts in diversity actions. 28 U.S.C. § 1332 (1976). As a result of this shortcoming, this Court is without power or authority to hear this case.

Because this Court lacks jurisdiction to proceed, the complaint is dismissed without prejudice so that plaintiff may seek relief in the proper form.

AND IT IS SO ORDERED.