**John S. TRIMPER, Plaintiff,**

v.

**NATIONWIDE INSURANCE CO., Defendant.**

**Civ. A. No. 81–2206–3.**

United States District Court,
D. South Carolina,
Florence Division.

June 2, 1982.

---

J. Frank Looper, Florence, S. C., for plaintiff.

Saunders M. Bridges, Jr., Bridges, Bridges & Orr, Florence, S. C., for defendant.

## ORDER

GEORGE ROSS ANDERSON, Jr., District Judge.

This action, for recovery of insurance benefits under a theft provision of a homeowner's policy, was tried before a jury on March 3, 1982. Plaintiff's first cause of action for recovery of the available policy proceeds and his fourth cause of action for punitive damages, based on the alleged bad faith and recklessness of the Defendant in failing to properly and reasonably investigate and settle his claim, were submitted to the jury.

The jury returned a verdict for the Plaintiff in the amount of One Thousand, Nine Hundred Twenty and No/100 ($1,920.00) Dollars actual damages, which represented the maximum policy coverage available, and One Thousand, Five Hundred and No/100 ($1,500.00) Dollars punitive damages. Thereafter, Plaintiff moved for and was granted One Thousand and No/100 ($1,000.00) Dollars representing attorney's fees pursuant to Section 38–9–370, *South Carolina Code of Laws*, 1976.

This matter is presently before the Court on Defendant's motions for judgment, *n. o. v.*, pursuant to *Fed.R.Civ.P.* 50(b), as to both causes of action, and for amendment of the judgment to disallow the prior award of attorney's fees.

The essential facts are not in dispute. On May 23, 1981, during the early morning hours, personal property belonging to Mr. and Mrs. Trimper was stolen from their 1978 Datsun automobile while it was parked in the lot of a Jacksonville, Florida motel. Trimper testified he and his wife were in route from Florence, South Carolina to Flagler Beach, Florida and had stopped in Jacksonville at approximately 11:00 P.M. on May 22, 1981 to spend the night. Prior to retiring, Trimper checked to ensure the car doors were locked. The following morning he discovered the driver's and passenger doors ajar, but still locked. Luggage and other items of personal property were missing. He immediately informed the desk clerk of the theft, who in turn contacted the Sheriff's Department. Soon thereafter, an investigating officer arrived at the scene, questioned the Plaintiff and his wife, took an inventory of missing property and dusted the automobile for fingerprints.

Trimper contacted his homeowner's insurance carrier, the Defendant herein, on June 1, 1981, the day he returned to South Carolina. On June 2, 1981, Ms. Eato, Defendant's telephone claims representative in Columbia, South Carolina, contacted the Trimpers by telephone and took their statement. She indicated no action would be taken on the claim until a copy of the Incident Report was received from Jacksonville, Florida. Four weeks later Ms. Eato advised Mr. Trimper that she had not yet received the Report. Annoyed by the unexplained delay, Trimper requested the Incident Report from Jacksonville and forwarded it to the Defendant by mail on August 3, 1981. The following day, the Plaintiff was advised that his claim was being denied because the Incident Report indicated there were no visible signs of forcible entry. Thereafter, despite Plaintiff's requests, the Defendant refused to send a claims representative to inspect the vehicle. Ms. Eato testified it was the established policy of the Defendant to adjust all automobile theft claims by telephone. Plaintiff filed this action on September 3, 1981.

The homeowner's policy provision reads in pertinent part:

PART II(2) THEFT, but excluding loss (d) of property left unattended in or on any motor vehicle, other than a public conveyance ... *except* as loss results from forcible entry (of which there must be visible evidence) into a fully enclosed body or compartment ... the doors and windows of which have been closed and locked.

At trial, the Plaintiff testified that after his return to South Carolina, he noticed small cuts and scratches on the rubber molding around the driver's window. He subsequently took the automobile to a locksmith to examine the damage. The locksmith, Ronnie Somerset, testified that the marks and cuts he observed were, in his opinion, caused by an attempt to gain forcible entry into the passenger compartment of the automobile by tripping the lock. Somerset exhibited a flat metal object, known as a "slim jim," which he described as a device for gaining access into a locked automobile. He further testified that when employed in a hurried manner such a device often leaves residual marks such as those found on the Trimpers' automobile.

The Florence County Sheriff's Investigator corroborated Mr. Somerset's testimony; stating that based on his experience in law enforcement, such makeshift devices are commonly used in the theft of property from automobiles.

The Defendant does not contend that the applicability of the policy provision is not a question of fact for the jury. However, the Defendant seeks judgment, *n. o. v.*, on the grounds that the cuts and scratches found on the rubber molding were as easily caused by normal wear as by forcible entry. Defendant argues that the connection between the evidence submitted to the jury and a finding of forcible entry is too speculative to support a verdict for the Plaintiff.

■ The purposes served by requiring a claimant to prove forcible entry with some evidence thereof are abundantly clear. First, by requiring a felonious entry to be "forcible," the policy provides coverage only when the insured has exercised reasonable diligence in securing the contents of the automobile. Second, the requirement of "visible evidence" of such entry provides some protection to the insurer against fraud by the insured. Essentially, the substantive condition of this policy provision imposes a rule of evidence upon the parties.

In *Prothro v. Commercial Casualty Ins. Co.*, 200 S.C. 432, 21 S.E.2d 1 (1942), the South Carolina Supreme Court interpreted an almost identical insurance policy provision dealing with the theft of property from a business safe. Although the Court in *Prothro* focused on a different aspect of the provision (whether actual force was required to be the sole factor of felonious entry in order to recover) the reasoning clearly suggests such provisions should be strictly interpreted against the insurer.

■ The standard for granting judgment, *n. o. v.*, is identical to the standard for directing a verdict. *Hawkins v. Sims*, 137 F.2d 66 (4th Cir. 1943). In determining whether or not the Plaintiff's evidence was sufficient to create an issue of fact for the jury, this Court is not free to weigh that evidence; indeed, the Plaintiff is entitled to every legitimate inference which can be drawn therefrom. *Shelton v. Jones*, 356 F.2d 426 (4th Cir. 1966). Moreover, the credibility of the witnesses and the probative weight of the evidence merely present questions solely within the province of the jury. *Allen v. Zurich Insurance Company*, 667 F.2d 1162 (4th Cir. 1982).

■ In South Carolina, insurance policies are construed most strongly in favor of coverage and against the insurer who drafted them. *Gaskins v. Blue Cross-Blue Shield of South Carolina*, 271 S.C. 101, 245 S.E.2d 598 (1978). It would be patently unfair to allow an insurer to rely on a substantive condition of its policy to the extent that a claimant is forced to make a heightened *prima facie* showing in order to overcome a motion for directed verdict. The policy provision requires only that there be visible evidence of forcible entry; whether such evidence is sufficient to support a recovery was properly a question for the jury. *See, Thibodeaux v. Southeastern Fire Ins. Co.*, 399 So.2d 704 (La.App.1981).

Defendant's second ground for judgment, *n. o. v.*, concerns Plaintiff's recovery of punitive damages under his cause of action for willful or reckless failure to settle or investigate his claim. Defendant contends that such a cause of action does not exist in first-party situations in South Carolina, or alternatively, if one does exist, the facts of this case do not justify recovery.

■ The South Carolina Supreme Court has not been presented the issue of whether or not such a cause of action exists. When state law is uncertain or silent, a federal court in a diversity case must determine what the state court would decide if faced with the identical question. *Brendle v. General Tire and Rubber Co.*, 505 F.2d 243 (4th Cir. 1974).

In *Robertsen v. State Farm Mutual Auto Insurance Co.*, 464 F.Supp. 876 (D.C.S.C. 1979), Judge Blatt, in a most comprehensive order, surveyed relevant South Carolina cases and judicial trends, and concluded the South Carolina Supreme Court would recognize a cause of action for bad faith refusal to settle a first-party insurance claim.

In *Wilkie v. Home Security Life Ins. Co.*, 514 F.Supp. 896 (D.S.C.1981), Judge Chapman concluded that the reasoning of *Robertsen*, which had been applied in the context of first-party personal injury protection (PIP) benefits provided under an automobile insurance policy, was not applicable to a claim involving disability insurance:

Although it is now optional, at the time of (*Robertsen*), PIP coverage was still mandatory. The coverage at issue is not mandatory, but is purely voluntary, being based not upon a statutory requirement but purely upon a contract between the parties. (514 F.Supp. at 898).

■ It has long been the law in South Carolina that a liability insurer owes its

insured a duty to defend and settle actions brought against its insured in good faith and with reasonable care for the rights of the insured. *Tyger River Pine Co. v. Maryland Casualty Co.*, 170 S.C. 286, 170 S.E. 346 (1933). Unreasonable refusal on the insurer's part to accept an offer of compromise settlement has been held to render it liable in tort to the insured for the amount of the judgment against the insured in excess of policy limits. *Miles v. State Farm Mutual Automobile Ins. Co.*, 238 S.C. 374, 120 S.E.2d 217 (1961). The issue posed here, as it was in *Robertsen* and *Wilkie*, is whether the South Carolina Supreme Court would extend such a remedy from third-party to first-party situations. After thoroughly reviewing the *Robertsen* and *Wilkie* decisions and the applicable precedent in South Carolina, this Court is of the opinion that the South Carolina Supreme Court would now recognize a cause of action in tort for the wrongful failure to investigate and settle a first-party insurance claim.[1]

 Judge Blatt, in *Robertsen*, utilized South Carolina's "Tyger River" doctrine as the medium for judicial precedent and historical persuasion for recognition of a first-party cause of action in tort. However, *Robertsen* did not rest solely on the traditional bases for permitting third-party actions.[2] The rationale which imposes a duty on an insurance company to exercise good faith in the negotiation and settlement of third-party claims is of equal but separate importance when an insured seeks payment of legitimate claims from his own insurance carrier.

Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement. Restatement, *Law of Contracts 2d* § 231 (Rev. and Edited 1973). It is the separate, intentional wrong which results from a breach of this implied-in-law duty of fair dealing in contractual relationships with this first-party tort seeks to redress. See, *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368 (1978), *Phillips v. Aetna Life Ins. Co.*, 473 F.Supp. 984 (D.Vt., 1979).

A homeowner possesses no bargaining power and no means of protecting himself from the type of condescending treatment which the Plaintiff, in this case, was subjected to. An insured does not contract to obtain any kind of commercial advantage or leverage but only to protect himself against the spectre of accidental loss. This is especially so in the area of homeowner's insurance. The very risks insured against dictate that when a claim is filed, the insured is likely to be in a difficult financial position and often at the mercy of an insurer who chooses to take the lofty position of refusing to actively investigate the alleged loss.

The South Carolina legislature has implicitly recognized the quasi-fiduciary nature of insurance companies by generating a broad range of statutory provisions which inure to

---

1. This Court adopts the reasoning and conclusions stated in *Robertsen*. Since *Robertsen*, there have been two decisions of the South Carolina Supreme Court in the area of tort law which serve to bolster the conclusion that the South Carolina Supreme Court would, at the very least, not abstain from resolving this issue in deference to the state legislature. *Ford v. Hutson*, 275 S.C. 92, 276 S.E.2d 776 (1981) (judicial recognition of the tort of outrage); and *Fitzer v. Greenville Y.M.C.A.*, 282 S.E.2d 230 (S.C.1981) (abolition of the doctrine of charitable immunity).

In a recently unpublished opinion the Fourth Circuit Court of Appeals was presented with the opportunity to determine whether a first-party action for bad faith refusal to settle an insurance claim is a cognizable tort in South Carolina. *Skinner v. English and American*

*Ins. Co., et al.*, 672 F.2d 913 (4th Cir. 1981). Having resolved the appeal on other grounds, the court declined to address the issue. See, *Charbonnages de France v. Smith*, 597 F.2d 406, 416 & n. 9 (4th Cir. 1979).

2. Where an insurer has the exclusive right and duty to defend, compromise or try a lawsuit on behalf of its insured, it is under an enhanced duty to act in good faith in third-party action so as to prevent the insured from exposure to liability in excess of the policy limits. Moreover, as settlement negotiations approach the policy limits, there is an obvious tendency for the insurer to view litigation as a "no lose" proposition. Therefore, courts have imposed a duty of good faith and fair dealing. *Santilli v. State Farm Ins. Co.*, 278 Or. 53, 562 P.2d 965 (1977).

the benefit of consumers. See, *S.C.Code* § 38–9–370 (failure of insurer to settle in good faith gives rise to allowable attorney's fees); and *Code* § 38–55–70, 240 (misrepresentation of policy terms by adjuster is equivalent to an unfair trade practice and invokes possible suspension of license); *Code* § 38–37–1110, *et seq.* (permits Insurance Commissioner to levy fine or suspension against insurer who fails to adopt reasonable standards for claim investigation). At least two courts have viewed this kind of sweeping regulatory scheme as a persuasive reason for recognizing first-party actions for bad-faith rejection of an insurance claim. See, *Christian v. American Home Assurance Co.*, 577 P.2d 899 (Okl.1977), and *Phillips v. Aetna Life*, 473 F.Supp. 984 (D.Vt., 1979).

■ When an insured has contracted for protection against a specified loss, he is entitled to expect that a claim made under a "blanket protection" policy will not be rejected except for good cause. See generally, R. Keeton, *Insurance Law* § 6.3 (1971). The consensus of jurisdictions which have adopted this tort require that, in order to recover, a plaintiff must show the absence of a reasonable basis for the denial of benefits, and the insurer's knowledge or reckless disregard of a reasonable basis for the denial. See, cases collected at 47 *A.L.R.3d* 314, 3 Appleman, *Insurance Law and Practice* § 1601, *et seq.* (1967). Thus, as long as an insurance company exercises that degree of ordinary and reasonable care in the adjustment of claims which it is already, in fact, held to under the statutory law of South Carolina (*supra*), it need not be coerced into paying questionable or extortionate claims which it deems unreasonable or ill-founded.

Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer … rather, tort liability may be imposed only where there is a clear showing that the insurer unreasonably,

and in bad faith, withholds payment. *Christian*, 577 P.2d at 904.

In a case such as this;

the question is, how did the matter appear … [to the insurance company] as judged by a reasonable and prudent man seeking to determine the facts of the controversy which it was his duty, in good faith, to investigate. *Koch, et al. v. Prudential Ins. Co.*, 205 Kan. 561, 565, 470 P.2d 756 (1970).

■ Here, there was virtually no effort on the part of the Defendant to investigate Plaintiff's claim, much less a "good faith" effort to do so. During the trial, the Defendant sought to rely on the contents of the Jacksonville Incident Report to justify its inaction. The Incident Report reads, "How entry was gained is unknown, no evidence was found other than the driver's side door being ajar but locked." On the basis of this naked language, the Defendant chose to put the entire burden of investigation and proof of loss on the Plaintiff, taking the position that the Incident Report completely absolved it from personally inspecting Plaintiff's automobile for evidence of unlawful entry. In short, the Defendant did not reasonably know, nor did it care, whether its cause or excuse for refusing to pay Trimper's claim was just.

Unlike *Robertsen* and *Wilkie* the Defendant chose not to raise this issue by motion to dismiss, but rather proceeded to trial on the merits. Consequently, this Court has before it a complete factual record to aid in determining whether an award of punitive damages was warranted.

The various jurisdictions which have allowed first-party causes of action for bad faith refusal to settle or investigate an insurance claim, have differed as to the requisite level of culpability necessary to assess punitive damages.[3]

---

**3.** Compare, *Phillips v. State Farm Mutual Automobile Ins. Co.*, 437 F.2d 365 (5th Cir. 1971) (applying Georgia law to infer a flat statutory penalty of 25%); and *Escambia Treating Co. v. Aetna Casualty and Surety Co.*, 421 F.Supp. 1367 (N.D.Fla.1970) (punitive damages require conduct which is "with malice, wantonness, willfulness, outrageous aggravation, or reckless indifference to the rights of others") and *Anderson v. Continental Ins. Co., supra*, at 379) (Wisconsin law requires defendant to be guilty of "oppression," "fraud" or "malice");

The Supreme Court of Mississippi has succinctly expressed the policy behind granting punitive damages in these cases:

> If an insurance company could not be subjected to punitive damages it could intentionally and unreasonably refuse payment of a legitimate claim with veritable impunity. To permit an insurer to deny a legitimate claim, and thus force a claimant to litigate with no fear that claimant's maximum recovery could exceed the policy limits plus interest would enable the insurer to pressure an insured to a point of desperation; enabling the insurer to force an inadequate settlement or avoid payment entirely. *Standard Life Insurance Co. of Indiana v. Veal*, 354 So.2d 239 (Miss.1978).

The availability of punitive damages in these cases has developed simultaneously with the tort theory of recovery as helpful in assisting to balance the inequities caused by the adhesive nature of insurance contracts.

In this case, the jury was instructed that it could award punitive damages only upon a finding that the Defendant's conduct was "willful" or "reckless" as defined by South Carolina law. South Carolina has long recognized such conduct as sufficient to support a finding of punitive damages in tort cases. *Hinds v. United Ins. Co. of America*, 248 S.C. 189, 149 S.E.2d 771 (1966); *Kushner v. Legette*, 330 F.2d 447 (4th Cir. 1964). In *Robertsen*, Judge Blatt predicted that the South Carolina Supreme Court would allow punitive damages in a first-party action upon a showing of a "willful, wanton or reckless" act (supra at 884). This court agrees, and can discern no reasonable justification for assuming that South Carolina would require a higher standard of culpability under this particular cause of action.

It is the opinion of this Court that based on the facts in evidence, the jury could reasonably have concluded that the Defendant's callous conduct in the handling of Trimper's claim was "willful" or in reckless disregard of his rights.

The Defendant has also moved to amend the judgment to disallow the award of attorney's fees. See, *Fed.R.Civ.P.* 50(b). Section 38–9–320 of the *S.C.Code of Laws* (1976), provides in pertinent part:

> "In the event of a claim, loss or damage which is covered by a policy of insurance ... and the refusal of the insurer ... to pay such claim within ninety days after a demand has been made by the holder of the policy or contract made by the trial judge of a county court or court of common pleas that such refusal was without reasonable cause or in bad faith, the insurer ... shall be liable to pay such holder, in addition to any sum or any amount otherwise recoverable, all reasonable attorneys' fees for the prosecution of the case against the insurer ... The amount of such reasonable attorneys' fees shall be determined by the trial judge and the amount added to the judgment ..."

In *Nelson v. United Fire Ins. Co. of N.Y.*, 267 S.E.2d 604 (S.C.1980), Justice Ness remarked:

> "The trial court should consider the relevant evidence adduced upon the trial of the main issue and any other competent evidence relevant to whether or not there was lack of reasonable cause or bad faith in the refusal to pay ... the statute patently does not require payment of attorneys' fees in every contested case won by the insured." 267 S.E.2d at 607.

In *Louthian v. State Farm Mutual Ins. Co.*, 357 F.Supp. 894 (D.C.S.C.1973), Judge Simons, commenting on the wording of this attorneys' fee provision, deemed it significant that the state legislature expressly limited its applicability to common pleas or county court. He further opined that this apparent limitation was consistent with the fact that a state legislature is powerless to compel the award of attorneys' fees in an action brought in federal court. It is unclear whether this reasoning was the basis for his resolution of the issue as he further

and *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 598 P.2d 452, 157 Cal.Rptr. 482 (1979) (Under California law, evidence of

dishonesty, bad faith or overreaching is sufficient to justify punitive damages).

stated, "Even were such a provision binding on this court, I would not hesitate to find in this case that the insurer's refusal to pay was not 'without reasonable cause or in bad faith'." (357 F.Supp. at 901)

This Court is persuaded that the *Erie*[4] doctrine compels a more receptive treatment of § 38–9–320, *supra.* In *Hanna v. Plummer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the Supreme Court stated:

> The *Erie* rule is rooted in part in a realization that it would be unfair for the character or result of a litigation materially to differ because the suit had been brought in a federal court. 380 U.S. at 467, 85 S.Ct. at 1141.

A federal court sitting in a diversity action should, whenever possible, reach the same result as the state court would reach in deciding the identical issue. *Markham v. City of Newport News,* 292 F.2d 711 (4th Cir. 1971). To deny a South Carolina litigant the benefit of this remedy in federal court would have the effect of precluding an award of attorney's fees in all cases where diversity of citizenship exists, or where removal jurisdiction is secured under 28 *U.S.C.* § 1441, *et seq.* This result would engender the type of "unfair discrimination" discussed in *Hanna, supra.*

Under the Supremacy Clause, a state legislature may not intrude into activities reserved clearly to the federal government, but the South Carolina legislature did not attempt to do so in passing § 38–9–320, *supra.* See generally, *Swift and Co. v. Wickham,* 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965). To hold otherwise would be tantamount to turning the *Erie* doctrine on its head, and to undermine the notions of state sovereignty which *Erie* seeks to preserve.

This Court concludes that § 38–9–320, *Code of Laws of South Carolina* (1976), is applicable in this case, and that the facts of this case warrant an award of reasonable attorney's fees to the Plaintiff. The complete failure of the Defendant to adequately investigate the merits of the Plaintiff's claim supports the determination that the subsequent refusal to pay is without reasonable cause within the meaning of *Nelson, supra.* See, *Lord v. State Auto and Casualty Underwriters,* 208 Kan. 227, 491 P.2d 917 (1971). Defendant has not contested the amount of the attorney's fee assessed as being unreasonable, and this Court concludes the award was clearly reasonable in a case which was entirely contested and litigated.

Based upon all the foregoing, it is therefore,

ORDERED, that Defendant's Motions for Judgment, N.O.V., and to Amend the Judgment be and are hereby denied.

IT IS SO ORDERED.

---

4. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).