Mona PATEL, a minor under the age of fourteen (14) years, by her General Guardian, Rasik C. PATEL; and Rasik C. Patel, Natural Father of Mona Patel, Plaintiffs,

v.

Denver D. McINTYRE, Executor of the Estate of James J. McIntyre, deceased; Charles R. McIntyre, Administrator C.T.A. of the Estate of Nellie Lou McIntyre, deceased; Steve Dyar, individually and/or as an agent, servant and/or employee of the Oconee County Sheriff's Department; Earl Holcombe, individually and/or in his official capacity as Sheriff of Oconee County; the County of Oconee; the South Carolina Department of Highways and Public Transportation; the South Carolina Highway Patrol; and Walker P. Ragin, individually and/or in his official capacity as Chief Commissioner of the Department of Highways and Public Transportation, Defendants.

Civ. A. Nos. 8:85–2595–16 through 8:85–2602–16.

United States District Court, D. South Carolina, Anderson Division.

Aug. 24, 1987.

Steven M. Krause, Anderson, S.C., Lee M. Weinstein, Atlanta, Ga., for plaintiffs.

George L. Sands, Jr., Anderson, S.C., for D. McIntyre & Charles R. McIntyre.

Cary C. Doyle, Anderson, S.C., for other defendants.

Theron G. Cochran, Greenville, S.C., for S.C. Highways & Public Transportation & Walker P. Ragin.

ORDER

HENDERSON, District Judge.

These eight consolidated actions arise out of an automobile accident involving plaintiffs Kailash Patel, Nimita Patel, Hiren Patel, Harish Patel, Mona Patel, Pinki Patel and decedents Pravin Patel and Asha Patel, who were in one vehicle, and decedents James J. McIntyre and Nellie Lou McIntyre, who were in a second vehicle. The plaintiffs allege that on August 26, 1985, defendant Denver D. McIntyre's testate, James J. McIntyre, was driving his automobile in the wrong direction on Interstate 85 in Oconee County, South Carolina, and crashed head-on into the automobile driven by the decedent Pravin Patel. The collision killed four people, Pravin and Asha Patel and the McIntyres, and injured the remaining passengers in the Patel automobile.

The complaints further allege that defendants Steve Dyar, Earle Holcombe and the County of Oconee are liable in tort and under 42 U.S.C. § 1983 for the deaths of and injuries to the Patels. Defendant Dyar is an Oconee County deputy sheriff and defendant Holcombe is the Oconee County Sheriff. Defendants Dyar, Holcombe and the County of Oconee ("these defendants") have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that they are entitled to judgment as a matter of law. For the reasons set forth below, their motion is granted.

I.

Summary judgment is appropriate only when the pleadings, depositions, interrogatory answers, admissions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the burden of showing the absence of a genuine issue of material fact and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

The record before this Court includes the pleadings and the depositions of Steve Dyar, Layton W. Brown, Prakash V. Desai, M.D., Dr. Rajenda C. Desai, Dr. Lawrence B. Schlackter, Marvin M. Mitchell, M.D., and Susan Joseph. The record also includes the affidavits of Cash Williams, Wanda J. Rogers, Richard H. Gadsden, Sr., Wilton E. Mackey, Charlie Boseman, Becky Watson, R.M. Hammond and J.B. Rowland. The record also contains three exhibits attached to the plaintiffs' memorandum in opposition to these defendants' summary judgment motion.

The facts and the inferences therefrom viewed in the light most favorable to the plaintiffs are as follows. The record reveals that sometime between midnight and 12:25 a.m. on Monday, August 26, 1985, defendant Dyar was on duty as an Oconee

County deputy sheriff and was driving his patrol car on S.C. Highway 82 approaching the Fair Play community in Oconee County, South Carolina. The weather was cloudy and rainy. At the intersection of S.C. Highways 82, 59 and 243, he saw decedent McIntyre standing in the right of way on the right side of Highway 59. McIntyre was waving his arms at Dyar, apparently to get Dyar's attention. Dyar pulled his patrol car over and saw that McIntyre was standing behind a white Cadillac which was stopped completely off the road in a muddy empty field. He saw a lone female passenger, decedent Nellie Lou McIntyre (McIntyre's wife), in the front passenger seat of the vehicle. The vehicle was somewhere between six (6) to ten (10) feet and a maximum of thirty-five (35) feet off the road with its front end headed into the field and its back end nearer the roadway of Highway 59.[1] The field contained a shallow ditch or indentation in the ground which the Cadillac had apparently traversed before coming to a stop.

The record further shows that Dyar approached McIntyre and that McIntyre told Dyar he and his wife were returning from Seneca and he was not familiar with the area. He said he had "missed the sign," referring to the stop sign on Highway 59,[2] and did not see well at night. Dyar did not ask McIntyre how fast he was driving or if he had been drinking. He did not ask for McIntyre's driver's license nor did he perform a license plate check on the Cadillac. Dyar testified in his deposition that McIntyre said he (McIntyre) did not see signs well at night and was scheduled to have an operation soon because of an eye problem.[3]

Dyar talked briefly with Mrs. McIntyre who thanked him for his offer of assistance. When McIntyre's attempt to back out of the field failed because the mud caused his tires to spin, Dyar called the Oconee County Sheriff's office dispatcher to send a wrecker. The Oconee County Sheriff's office dispatch record manifests the dispatcher called Layton Brown, a local wrecker operator, at 12:26 a.m.

Brown testified by deposition that he arrived approximately five to eight minutes after receiving the call, checked the Cadillac's tires which were undamaged and hooked his wrecker to the back end of McIntyre's Cadillac. He pulled the vehicle out of the field, across Highway 59 and into a parking space. He had a brief conversation with McIntyre when McIntyre paid him the $20 tow charge. Brown testified he was at the scene approximately ten minutes and then returned home to bed.

Both Dyar and Brown testified by deposition that McIntyre was neatly dressed, walked straight and steadily, spoke without slurring, had clear eyes, acted alert, did not smell of alcohol and exhibited no other outward signs of intoxication. Dyar performed no field sobriety tests on McIntyre other than his own observation of McIntyre during the approximately ten to fifteen minutes he had contact with McIntyre. Dyar testified he asked Mrs. McIntyre if her husband was all right and she responded that he was. Dyar spoke to Mrs. McIntyre as she sat in the front seat of the Cadillac and observed that apparently she was missing both legs. He observed no liquor bottles or other containers in the car

1. At that point, Highway 59 intersects with Highway 243 to the east and Highway 182 to the south. On the night in question, there were two stop signs at the intersection, one for traffic heading south on Highway 59 and one for traffic heading south on Highway 82. Highway 59 runs north-south in this area.

2. The red and white reflector stop sign on Highway 59 was one of several signs at that intersection, including a wooden Army Corps of Engineers sign listing nearby boat ramps, at least one green and white reflector highway sign indicating "Atlanta" or "Anderson," at lease at least one red, white and blue reflector sign for I-85 and at least three black and white highway signs

indicating "59," "182" and "243." Less than a mile before the stop sign on Highway 59 heading south was a thirty-five (35) mile an hour speed limit sign and within approximately one hundred (100) feet of the stop sign was a yellow and black "stop ahead" sign. The intersection had several buildings near it, including an elementary school, a bakery, a supply store and at least one vacant building.

3. In an earlier unsworn statement, Dyar said McIntyre had claimed he was lost and had night blindness. In his deposition, Dyar testified he did not recall whether McIntyre made those claims.

while he talked with her but did not otherwise search or examine the vehicle. He stated the vehicle appeared to be undamaged. Dyar further testified that McIntyre told him they were going to Anderson and asked him where to get gas. Dyar told McIntyre the Cherokee Run Truck Stop on Highway 243 was the only place open for gas.[4]

According to Dyar's deposition, McIntyre and his wife then left heading east on Highway 243 toward the truck stop and Interstate 85. Exit 4 on I–85 is located near the Cherokee Run Truck Stop on Highway 243 and at approximately the four (4) mile marker on I–85. Dyar did not follow them; instead, he went south on Highway 59 to check the Fair Play boat ramp and the Comfort Inn parking lot and then went off duty. The Oconee County Sheriff's office duty sheet manifests Dyar went "10–42" at 12:29 a.m. Dyar explained that "10–42" meant "going off duty" and that he usually did not sign out "10–42" with the dispatcher until he was at home in his driveway. Dyar's house was approximately three-tenths (³/₁₀) of a mile from where the McIntyres' car was stopped.

The record reveals that at approximately 1:11 a.m., two officers of the South Carolina Highway Patrol, Trooper R.M. Hammond and Trooper J.B. Rowland, received radio calls from the highway patrol dispatcher for Anderson County that a white Cadillac was heading north on I–85, a divided, controlled-access interstate highway, in the southbound lane near the eleven (11) mile marker.[5] While still en route, they were informed by the dispatcher that the vehicle had collided with another vehicle at the twelve (12) mile marker. Trooper Hammond later learned from a bystander the

collision had occurred at approximately 1:16 a.m. When the troopers arrived, the McIntyres' vehicle was upside down on the grass median and the McIntyres were inside the vehicle. Both troopers observed a 375 milliliter bottle of ninety (90) proof Evan-Williams Bourbon lying on the roof of the interior of the vehicle with approximately one (1) inch of liquor remaining in the bottle.[6]

The Anderson County Coroner, Wilton W. Mackey, stated there were two (2) dead people in the vehicle that collided with the McIntyres' Cadillac: a small child, approximately one (1) year old, and a man approximately thirty (30) years of age. The coroner pronounced the McIntyres dead at 1:50 a.m. and took their bodies in his vehicle to the Anderson Memorial Hospital.

At approximately 9:30 a.m., Charlie Boseman, a laboratory technician at the Anderson Memorial Hospital, drew fluid from the eyes of the McIntyres, put the fluid drawn from James McIntyre in a test tube, labeled it and transferred it from the morgue to the laboratory for analysis. He later followed the same procedure with respect to Pravin Patel. At approximately 11:05 a.m., Becky Watson, a certified medical laboratory technician at the Anderson Memorial Hospital, analyzed the eye fluid specimen labeled "James McIntyre" for alcohol content. She determined the eye fluid contained 218 mg/dl of alcohol. Analysis of both Mrs. McIntyre's and Pravin Patel's eye fluid revealed no alcohol content.

Richard H. Gadsden, Sr., Ph.D., a toxicologist at the Medical University of South Carolina, opined by affidavit that the 218 mg/dl (0.218%) reading of alcohol content

---

**4.** In his earlier unsworn statement, Dyar said he suggested to McIntyre that McIntyre "ought not ... be driving" because of the bad weather and McIntyre's eye problem. Dyar further stated McIntyre asked if there was a motel nearby and Dyar responded there was a Comfort Inn on Highway 59. In his deposition, Dyar testified he did not know if he had had such a conversation with McIntyre.

**5.** A radio call reporting the same information was received at 1:09 a.m. by the dispatcher at

the Oconee County Sheriff's office according to the dispatch record.

**6.** The affidavits of Troopers Hammond and Rowland state the size of the bottle was 3.75 milliliters, which is approximately one-tenth (¹/₁₀) of an ounce. The Court assumes the affidavits are mistaken and the bottle originally held 375 milliliters, which is approximately one (1) pint.

was a valid reading. He further opined that McIntyre's eye fluid alcohol level at 12:00 midnight would have ranged between 230 mg/dl and 248 mg/dl or approximately 238 mg/dl (0.238%) in order to produce a 218 mg/dl reading at the time of his death at approximately 1:16 a.m. He further opined that McIntyre's alcohol content would have been essentially the same at the time his eye fluid was tested as it was at the time of his death. Finally, he opined that, although the rate of absorption of alcohol is subject to variances such as the amount of food in an individual's stomach at the time alcohol is consumed, an individual would have had to consume a "very large amount of alcohol whether in a short or long period of time" to attain an alcohol level of 0.218 percent.

In his deposition, Dyar testified that the policy of Oconee County was that a County deputy was not to ask a stranded motorist for a driver's license when rendering assistance. He further testified that the policy was included in a manual defendant Holcombe had put together. Dyar also testified that there was no procedure for handling impaired drivers other than the procedure for handling drivers under the influence. He also testified that if he had arrested McIntyre for driving under the influence, his procedure would have been to take him to jail in Walhalla, South Carolina, approximately twenty-five (25) miles from the site where McIntyre's car ran off the road. Finally, Dyar stated that one of the characteristics of a drunk driver is that he drives erratically, including running "out of the road." It is undisputed that Dyar's duty at that time included and required the apprehension and arrest of individuals violating traffic laws and driving in an unsafe manner.

## II.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judg-ment "shall be rendered forthwith" if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. As the United States Supreme Court has recently declared: "[T]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails ... to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986). In addition, Rule 56(e) provides that a party opposing a properly supported motion for summary judgment may not rest on the mere allegations of his pleadings but must set forth or point to specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, ——, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202, 217 (1986). Here, the Court holds that the plaintiffs have not set forth specific facts establishing, and cannot establish, at least one essential element of each of their causes of action against these defendants and therefore no genuine issue of material fact remains for trial.

### A.

The plaintiffs' third and fourth causes of action against these defendants are negligence claims.[7] The third cause of action alleges defendant Dyar, individually and/or acting as an agent of defendant Oconee County, negligently and recklessly breached his duty of care by: (1) aiding and abetting defendant James McIntyre in getting McIntyre's disabled vehicle back on the highways of South Carolina when he knew or should have known McIntyre was highly intoxicated and suffered from severely impaired vision; (2) failing to enforce the laws of South Carolina; (3) allowing McIntyre to drive on the highways of

---

7. The plaintiffs' first, second, sixth and seventh causes of action relate only to the McIntyre defendants. Their fifth cause of action against the South Carolina Department of Highways and Public Transportation, its Chief Commissioner and the South Carolina Highway Patrol ended by entry of summary judgment in favor of those defendants. Order filed June 5, 1986. The eighth and ninth causes of action are against defendants Dyar and Oconee County and allege, respectively, the tort of outrage and the deprivation of rights arising under 42 U.S.C. § 1983. These claims are treated in Parts II(B) and II(C) of this order.

South Carolina in an unlawful and negligent manner; and (4) failing to exercise the reasonable man degree of care. The fourth cause of action alleges defendant Holcombe, individually and as Oconee County Sheriff, is liable for the actions of his deputy pursuant to Sections 23–13–10 and 23–13–20, Code of Laws of South Carolina, 1976, as amended, and therefore is answerable for defendant Dyar's negligence and recklessness as set forth in the third cause of action.

The third and fourth causes of action arise under the Court's diversity jurisdiction and therefore the Court is to apply the substantive law of South Carolina. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In South Carolina, three elements are essential to a cause of action based on negligence: (1) the existence of a duty on the part of the defendant to protect the plaintiff; (2) the failure of the defendant to discharge the duty; and (3) an injury to the plaintiff resulting from the defendant's failure to discharge the duty. The absence of any one of the elements renders the evidence insufficient. *Winburn v. Insurance Co. of North America*, 287 S.C. 435, 443, 339 S.E.2d 142, 147 (Ct.App.1985). With respect to the first element, "[n]egligent conduct becomes actionable only when it violates some specific legal duty owed to the plaintiff." *Brown v. South Carolina Insurance Co.*, 284 S.C. 47, 51, 324 S.E.2d 641, 644 (Ct.App.1984), *cert. dismissed*, 290 S.C. 154, 348 S.E.2d 530 (1985). The question of the existence of a duty is a question of law. *Jensen v. Conrad*, 570 F.Supp. 91, 110 (D.S.C.1983), *aff'd*, 747 F.2d 185 (4th Cir.1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1754, 84 L.Ed.2d 818 (1985); Prosser, *Handbook of the Law of Torts* § 37 (4th ed. 1971). This Court, then, must first determine what, if any, duty these defendants owed to the plaintiffs under the facts viewed in the light most favorable to the plaintiffs.

Although the plaintiffs allege defendant Dyar breached his duty of care to them by four separate breaches, the substance of their complaint is, in effect, that Dyar breached his duty to enforce the laws of South Carolina. The allegation that he "allowed McIntyre to drive" would be the automatic result of his failure to enforce state law and does not give rise to an additional duty. Likewise, the allegation that defendant Dyar "aided and abetted McIntyre" in McIntyre's driving would necessarily result from his failure to arrest or otherwise restrain McIntyre. The plaintiffs' fourth allegation, that defendant Dyar did not exercise the reasonable man standard of care, merely sets forth a standard of care and does not state a separate breach.

### 1. *Duty to Enforce Law Generally*

The general rule is that the duty of a law enforcement officer to arrest lawbreakers is one owed to the public generally rather than to specific individuals. *Everton v. Willard*, 468 So.2d 936, 938 (Fla.1985); *see* 70 Am.Jur.2d *Sheriffs, Police, and Constables* § 94 (1987). In 1856, the United States Supreme Court declared as an "undisputed principle of the common law" that for a breach of a public duty, a public officer is punishable by indictment only. *South v. Maryland*, 59 U.S. (18 How.) 396, 402, 15 L.Ed. 433 (1856). There, an individual injured by a mob sued the sheriff and the sureties on the sheriff's bond for failing to protect him. The Court found no liability owing from the sheriff to the individual for neglect of his duty as conservator of the peace, a duty the Court characterized as a public duty for which he was answerable only to the public.[8]

More recently, a general duty/special duty doctrine has evolved that insulates a governmental unit and its law enforcement officers from liability to an individual for failure to provide police protection or to enforce the law unless the individual can show that by statute or circumstances he is owed a special duty. Many courts describe this doctrine by the axiom "a duty to all is

---

8. The Court reviewed English common law and concluded that the "history of the law for centuries ... [reveals that] no instance can be found where a civil action has been sustained against [a sheriff] for his default or misbehavior as conservator of the peace...." 59 U.S. at 403.

a duty to none." *See generally* Annot., 41 A.L.R.3d 700 (1972) ("Personal Liability of Policeman, Sheriff, or Similar Peace Officer or His Bond, for Injury Suffered as a Result of Failure to Enforce Law or Arrest Lawbreaker"); Annot., 46 A.L.R.3d 1084 (1972) ("Liability of Municipality or Other Governmental Unit for Failure to Provide Police Protection").[9] Some courts have used the discretionary/ministerial function dichotomy as a part of their duty analysis. *See, e.g., South v. Maryland, supra.*[10]

There appears to be no controlling precedent in South Carolina as to whether a law enforcement officer's duty to enforce the law is a duty to the public only, for the breach or nonperformance of which he is not liable to an individual member of the public. In the exercise of its diversity jurisdiction, this Court's duty as to a question of substantive law the South Carolina courts have not yet ruled on is to foretell the South Carolina Supreme Court's decision if presented with the same question. *Wilkie v. Home Security Life Insurance Co.*, 514 F.Supp. 896 (D.S.C.1981).

■ This Court concludes that South Carolina would regard the law enforcement duty as a public duty from which no liability would flow to an individual for the failure to perform it unless the individual can show he is owed a special duty by statute or circumstances. First, English common law continues in effect in South Carolina except where altered by, or inconsistent with, the South Carolina Constitution or state statutes. *State v. Charleston Bridge Co.*, 113 S.C. 116, 101 S.E. 657 (1919); Section 14–1–50, Code of Laws of South Carolina, 1976. Accordingly, a South Carolina law enforcement officer's duty to enforce the law remains the common law public duty unless that conclusion is inconsistent with state law. In South Carolina, the office of sheriff is created by the South Carolina Constitution but his duties are prescribed by statute. S.C. Const. art. V, § 24; Sections 23–15–20 *et seq.*, Code of Laws of South Carolina, 1976, as amended. Both the office and the duties of a deputy sheriff are provided by statute. Sections 23–13–10 *et seq.*, 23–15–10 *et seq.*, Code of Laws of South Carolina, 1976, as amended. Among the statutory powers of the sheriff and his deputy is the power to arrest persons who violate the laws of South Carolina. *See, e.g.*, Sections 17–13–30, 23–13–60, 23–13–70, 23–15–50, Code of Laws of South Carolina, 1976.[11] These statutes,

---

**9.** For a related and more general discussion, see Annot., 38 A.L.R.4th 1194 (1985) ("Modern Status of Rule Excusing Governmental Unit from Tort Liability on Theory that Only General, Not Particular, Duty Was Owed Under Circumstances").

**10.** In *South v. Maryland*, the United States Supreme Court distinguished between the sheriff's function as conservator of the peace, a function it termed "not strictly" judicial, for which he would not be liable to an individual and his "ministerial" functions such as the execution of process for which he would be liable to an individual. 59 U.S. at 402–03. The Court thus fused the public duty/private duty analysis with the discretionary/ministerial function analysis. Other courts have analyzed the discretionary/ministerial function only as an immunity issue, that is, in the nature of a defense. *Leake v. Cain*, 720 P.2d 152 (Colo.1986). The treatment of the discretionary/ministerial function as a part of the duty analysis is apparently a modification of the "official immunity" doctrine. *See* 63 Am.Jur.2d *Public Officers and Employees* §§ 359, 362, 363.

**11.** Section 17–13–30:

The sheriffs and deputy sheriffs of this State may arrest without warrant any and all persons who, within their view, violate any of the criminal laws of this State if such arrest be made at the time of such violation of law or immediately thereafter.

Section 23–13–60:

The deputy sheriffs may for any suspected freshly committed crime, whether upon view or upon prompt information or complaint, arrest without warrant and, in pursuit of the criminal or suspected criminal, enter houses or break and enter them, whether in their own county or in an adjoining county.

Section 23–13–70:

The deputy sheriffs shall patrol the entire county at least twice a week by sections assigned to each by the sheriff, remaining on duty at night when occasion or circumstances suggest the propriety thereof to prevent or detect crime or to make an arrest. They shall always be on duty for not less than ten hours a day, except when granted occasional indulgences or leaves of absence by the sheriff. They shall frequent railroad depots, stores and other public places where people congregate, disorder is probable, vagrants may be loafing or alcoholic liquors may be sold, bar-

however, supplement rather than supersede the common law. They do not by their language or by interpretation alter the law enforcement duty as a common law public duty.[12]

Second, South Carolina has expressly recognized the public duty/private duty distinction in another setting. In *Parker v. Brown*, 195 S.C. 35, 10 S.E.2d 625 (1940), the South Carolina Supreme Court held that a county tax collector could not sue a county treasurer for commissions and fees the collector lost as a result of the treasurer's failure to issue executions for delinquent loans. Writing for the court, Acting Associate Justice J. Strom Thurmond declared:

The law necessarily grants certain discretion to its officers in handling the public business. In one instance it may be wise for a public officer to pursue one course, in another instance, another course. Those charged with protecting the public interest should view that interest as supreme, should consider what is best for the public, and should be free at all times to prosecute the course that appears to be in the public interest.... *It is well settled that an individual has no right of action against a public officer for breach of a duty owing to the public only, even though such individual be specially injured thereby.* Where a duty is owing to the public only, an officer is not liable to an individual who

may have been incidentally injured by his failure to perform it.

Throop on Public Officers, Section 708 (page 668), states: 'A private action can not be sustained, for failure to discharge a duty owing exclusively to the public, even by a person specially injured thereby.'

*Id.* at 52, 10 S.E.2d at 632 (emphasis added); *accord Hartline v. Clary*, 141 F.Supp. 151 (D.S.C.1956) (tort actions brought against Internal Revenue agents for allegedly invalid arrests dismissed because agents' duty to enforce laws was duty owed to public, not to individual, and erroneous performance injured public, not individual). Using the *Parker v. Brown* reasoning, this Court concludes that South Carolina would extend the public duty/private duty distinction to the law enforcement activity and would hold that a South Carolina sheriff's and a South Carolina deputy sheriff's duty to enforce the law is a public duty for the breach or nonperformance of which they are liable only to the public in the absence of a statute or circumstances [13] imposing a private duty.

A third reason that South Carolina would conclude that the law enforcement duty is in general a public duty derives from South Carolina's discretionary/ministerial function analysis. South Carolina has long distinguished between discretionary and min-

tered or given away and they shall as often as practicable ride by houses that are off the public highways and in lonely parts of the county, especially such as are without male protectors, and shall use every means to prevent or detect, arrest and prosecute for breaches of the peace, drunkenness, using obscene language, boisterous conduct or discharging of firearms on the public highways or at any public place or gathering, carrying weapons contrary to law, gambling, vagrancy, setting out fire, violation of the game and fish laws, cruelty to animals or children, violation of the child labor laws, lynching and for the violation of every law which is detrimental to the peace, good order and morals of the community.

Section 23–15–50:

The sheriff or his deputy shall arrest all persons against whom process for that purpose shall issue from any competent authority commanding such person to be taken into custody or requiring him to give bond, with

security. If the party so arrested, being entitled to bail, shall give it or shall give the bond with security required, such person shall be released; and if not, he shall be kept in custody until discharged from confinement according to law.

12. There are certain special South Carolina statutes, inapplicable here, that would impose a private duty on a law enforcement officer because they expressly provide for a private cause of action. *See, e.g.,* Section 16–5–30, Code of Laws of South Carolina, 1976.

13. Again, although South Carolina has not yet decided the circumstances that would impose a special duty, other courts have uniformly cited as an example of such circumstances the promise of police protection to an informant. *See, e.g., Schuster v. City of New York*, 5 N.Y.2d 75, 154 N.E.2d 534, 180 N.Y.S.2d 265 (1958).

isterial functions in determining a public official's liability *vel non* to an individual and has consistently held that a public official is immune from liability to an individual for discretionary acts. In 1933, the State Supreme Court held that the state bank examiner was not liable to the creditors and depositors of an insolvent bank for his alleged nonfeasance in the performance of his duties because of the "judicial" or discretionary nature of those duties. *Dunbar v. Fant*, 170 S.C. 414, 170 S.E. 460 (1933). South Carolina has consistently found no liability, in the absence of malice or corruption, when the public function performed is discretionary. In the oft-quoted decision, *Long v. Seabrook*, 260 S.C. 562, 197 S.E.2d 659 (1973), the State Supreme Court distinguished between discretionary and ministerial functions as follows:

> The duties of public officials are in general classified as ministerial and discretionary. They are also referred to as being ministerial and quasi-judicial. The character of an official's public duties is determined by the nature of the act performed. The duty is ministerial when it is absolute, certain, and imperative, involving merely execution of a specific duty arising from fixed and designated facts. *Quasi-judicial duties are such as necessarily require the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued....* In a tort suit against a public official whose duties are discretionary, it must be shown that in the performance or non-performance of those duties the public official was guilty of corruption, or bad faith, or influenced by malicious motives, before a recovery can be had.

*Id.* at 568–69, 197 S.E.2d at 662 (emphasis added). In *Long v. Seabrook*, the court found the duty of various county tax officials to provide information to taxpayers was not defined by law so precisely as to leave nothing to the exercise of discretion. *See also Milligan v. South Carolina Department of Highways & Public Transportation*, 283 S.C. 59, 320 S.E.2d 505 (Ct. App.1984) (summary judgment for defendants affirmed because pleadings did not allege ministerial duty); *cf. McIntyre v. Portee*, 784 F.2d 566 (4th Cir.1986) (South Carolina correctional officers' acts ministerial, citing *Long v. Seabrook*). Under South Carolina's broad definition of discretionary function, this Court finds, the law enforcement function involves the exercise of reason in the "adaptation of means to an end." [14]

Although these cases analyze the discretionary/ministerial function issue as an immunity issue rather than a duty issue, the one South Carolina case that expressly treats the public duty/private duty issue, *Parker v. Brown*, discusses as part of that treatment the discretion the law necessarily grants its officers and the importance of keeping its officers free in the exercise of their discretion to protect the public interest. 195 S.C. at 52, 10 S.E.2d at 632. It thus appears that South Carolina, like other jurisdictions, has fused the public duty/private duty and discretionary/ministerial function immunity analyses.

The plaintiffs contend, however, that the recent abolition of sovereign immunity in South Carolina has also abolished the discretionary/ministerial function distinction so that, even if it had at one time insulated a law enforcement officer from liability to an individual for a failure to enforce state law, it no longer provides that immunity.

---

**14.** In *Everton v. Willard*, 468 So.2d 936 (Fla. 1985), the Supreme Court of Florida discussed the discretionary nature of the law enforcement function in holding that a deputy sheriff's decision not to arrest a motorist on an intoxicated driving charge was a judgmental one for which he, the sheriff and the county were immune from suit:

> In our opinion, there is no distinction between the immunity afforded the police officer in making a determination of whether to arrest an individual for an offense and the discretionary decision of the prosecutor of whether to prosecute an individual or the judge's decision of whether to release an individual on bail or to place him on probation. All of these decisions are basic discretionary, judgmental decisions that are inherent in enforcing the laws of the state. They are clearly not ministerial acts....

*Id.* at 939.

Accordingly, they argue, the characterization of the law enforcement duty as a discretionary function is irrelevant. This assertion is incorrect. The abrogation of sovereign immunity in South Carolina has not resulted in the abolition of the discretionary/ministerial distinction nor has it created a duty where none existed before. In *McCall v. Batson,* 285 S.C. 243, 329 S.E.2d 741 (1985), the South Carolina Supreme Court abolished sovereign immunity as a defense to public liability for non-discretionary acts. It kept sovereign immunity intact, however, as a defense to public liability for discretionary acts. It also did not relieve a plaintiff of the obligation to establish all the elements of actionable negligence, including the existence of a duty owing from the defendant to the plaintiff. Where a defendant public officer had a public duty but owed no duty to an individual plaintiff before *McCall v. Batson,* as was the case with respect to a law enforcement officer's duty to enforce the law, *McCall v. Batson* neither changed that public duty nor created a duty to an individual plaintiff. *See generally* 57 Am.Jur.2d *Municipal, School, and State Tort Liability,* §§ 54; 72, at 81 (1971) ("It is well established that by consenting to be sued the state ... does not ... create a cause of action in [the claimant's] favor which did not theretofore exist.").

Sections 15–78–10 *et seq.* of the South Carolina Code of Laws, 1976, as amended (the "South Carolina Tort Claims Act"), reinforce this conclusion. Section 15–78–20(a) provides in part:

> Liability for acts and omissions under this chapter is based upon the traditional tort concepts of *duty* and the reasonably prudent person's standard of care in the performance of that duty.

(Emphasis added.) After declaring that the provisions of the Tort Claims Act provide "the exclusive civil remedy available for any tort committed by a governmental entity, its employees, or its agents" (with certain limited exceptions inapplicable here)

and that its provisions are to "be liberally construed in favor of limiting the liability of the State,"[15] the statute expressly provides in section 15–78–60(a):

> The government entity is *not* liable for a loss resulting from:
>
> (4) adoption, enforcement, or compliance with any law or *failure to* adopt or *enforce any law,* whether valid or invalid, including, but not limited to, any charter, provision, ordinance, resolution, rule, regulation, or written policies;
>
> (5) the exercise of discretion or judgment by the government entity or employee or the performance or *failure to perform any act* or service which is *in the discretion or judgment of the governmental entity or employee....*

(Emphasis added.) "Governmental entity" expressly includes political subdivisions of the State and, specifically, counties. Section.15–78–30(d), (h). Further, section 15–78–70(a) provides that "[a]n employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefor except as expressly provided for in subsection (b)."[16] "Employee" expressly includes a law enforcement officer. Section 15–78–30(c).

The South Carolina Tort Claims Act does not apply to these actions because they accrued before July 1, 1986. Sections 15–78–20(c), 15–78–180. Nevertheless, its enactment enhances this Court's ability to foretell what the South Carolina Supreme Court would do if presented with the issue of whether or not the law enforcement duty is a public duty for the breach or nonperformance of which a sheriff and his deputy are liable only to the public in the absence of a statute or circumstances imposing a private duty. First, the Court notes that the South Carolina Supreme Court would continue to hold that a public entity's and employee's tort liability must be based on the existence of a duty owing from the public entity or employee to the individual plaintiff, as the Tort Claims Act

---

**15.** Section 15–78–20(b), (f).

**16.** Subsection (b) denies immunity to an employee whose conduct is outside the scope of his official duties or involves actual fraud, actual malice, intent to harm or a crime involving moral turpitude.

explicitly provides. Second, this Court concludes that the South Carolina Supreme Court would hold that under the Tort Claims Act a public entity, including defendant Oconee County, is not liable for a failure to enforce the law and a public employee, including defendant Dyar and defendant Holcombe, is not liable for a failure to enforce the law unless his conduct in failing to enforce the law involves actual malice or intent to harm or similar aggravating circumstances. Finally, the Court concludes that the South Carolina Supreme Court would hold that the law enforcement duty is generally a public duty only, in part because it is a discretionary function within the definition of the Tort Claims Act.

2. *Duty to Restrain or Arrest Drunk Driver*

Although South Carolina courts have not ruled on the issue, the weight of authority elsewhere is that neither a law enforcement officer nor a governmental entity is liable to an individual injured by a drunk driver whom the government failed to restrain or arrest. *See, e.g., Harris v. Smith,* 157 Cal.App.3d 100, 203 Cal.Reptr. 541 (1984); *Leake v. Cain,* 720 P.2d 152 (Colo.1986); *Shore v. Town of Stonington,* 187 Conn. 147, 444 A.2d 1379 (1982); *Everton v. Willard,* 468 So.2d 936 (Fla.1985); *Luber v. City of Highland,* 151 Ill.App.3d 758, 104 Ill.Dec. 583, 502 N.E.2d 1243 (1986); *Fusilier v. Russell,* 345 So.2d 543 (La.Ct.App.), *cert. denied,* 347 So.2d 261 (La.1977); *Schutte v. Sitton,* 729 S.W.2d 208 (Mo.Ct.App.1987); *Lindquist v. Moran,* 203 Mont. 268, 662 P.2d 281 (1983); *Crosby v. Town of Bethlehem,* 90 A.D.2d 134, 457 N.Y.S.2d 618 (1982); *Barratt v. Burlingham,* 492 A.2d 1219 (R.I.1985); *Bailey v. Forks,* 38 Wash.App. 656, 688

P.2d 526 (1984); *cf. Sports, Inc. v. Gilbert,* 431 N.E.2d 534 (Ind.App.1982); *see generally* Annot., 48 A.L.R.4th 320 (1986) ("Failure to Restrain Drunk Drivers as Ground of Liability of State or Local Government Unit or Officer"); 70 Am.Jur.2d *Sheriffs, Police, and Constables* § 54 (1973); *contra Irwin v. Town of Ware,* 392 Mass. 745, 467 N.E.2d 1292 (1984); *Weldy v. Town of Kingston,* 128 N.H. 325, 514 A.2d 1257 (1986). These courts decided the issue using one or more of the following rationales: (1) the public duty/private duty doctrine and its "special relationship" exception (*e.g., Shore v. Stonington, supra; Irwin v. Ware, supra*); (2) the discretionary/ministerial nature of the duty to restrain a drunk driver (*e.g., Everton v. Willard, supra*) and (3) the nonaction of the police as affirmative conduct increasing the risk of imminent harm to an identifiable victim (*e.g., Harris v. Smith, supra; Shore v. Stonington, supra*).[17]

In *Stonington,* the court discussed all three rationales[18] in affirming summary judgment in favor of the defendants, the town and one of its police officers. The plaintiff's decedent was killed by a drunk driver whom the officer had stopped but not arrested approximately fifty (50) minutes earlier. The distinction between public duty and private duty, the court stated, is "an expression of the many policy considerations which lead the law to determine whether interests of a particular type are entitled to protection against conduct by officials." 187 Conn. at 152, 444 A.2d at 1382. After determining that a ministerial duty or a "clear and unequivocal" discretionary duty would impose a private duty, the court cautioned against creating a private cause of action arising from a law

---

**17.** Apparently no court to date has found that the nonaction of the police constitutes affirmative conduct increasing the risk of harm. *See generally* Annot., 48 A.L.R.4th 320, 342.

**18.** *Stonington* set forth as an additional exception to nonliability an allegation of wantonness, malice or intent to injure. 187 Conn. at 155, 444 A.2d at 1383. Here, although the plaintiffs allege both simple and gross negligence and wantonness on the part of these defendants

(*Second Amended Complaint* ¶¶ 6, 7 (Third Cause of Action), ¶ 3 (Fourth Cause of Action)), the Court concludes that the mere inclusion of the term "wantonness," under the instant facts viewed in the light most favorable to the plaintiffs, does not equate to an allegation of "malice or corruption" within the *Long v. Seabrook* holding nor would it equate to "actual malice or intent to injure" within the meaning of the Tort Claims Act.

enforcement officer's duty to enforce the law:

Should the officer try to avoid liability by removing from the road all persons who pose any potential hazard, he may find himself liable in many instances for false arrest. We do not think that the public interest is served by allowing a jury of laymen with the benefit of 20/20 hindsight to second-guess the exercise of a policeman's discretionary professional duty. Such discretion is no discretion at all.

*Id.* at 157, 444 A.2d at 1384.

■ Because this Court has concluded that in South Carolina the duty to enforce the law generally is a duty for the breach or nonperformance of which a public entity or employee is liable only to the public, it must next decide whether or not the duty to enforce the laws specifically relating to driving while intoxicated or otherwise impaired creates by statute or circumstances a special relationship exception to the public duty, thereby creating a private cause of action for the failure to enforce those laws.

The Court first notes that, in order to establish a special relationship exception based on statute, the plaintiffs must bring themselves within the intended scope of the statutes whose benefit they invoke to state a claim. *Parker v. Brown,* 195 S.C. at 42, 10 S.E.2d at 628; *see also Whitworth v. Fast Fare Markets of S.C., Inc.,* 289 S.C. 418, 338 S.E.2d 155 (1985). If they cannot, they have no cause of action for any act or failure to act under those statutes. The applicable South Carolina statutes can be grouped into two categories: (1) those relating to driving with impaired vision; and (2) those relating to driving while intoxicated.

(1) Section 56–1–130 of the South Carolina Code of Laws, requires the South Carolina Department of Highways and Public Transportation (Department) to examine the eyesight of each applicant for a driver's license. Section 56–1–170 authorizes the Department to impose restrictions "appropriate to assure the safe operation of a motor vehicle" on a driver's license and makes it a misdemeanor for any person

to operate a motor vehicle in violation of any restrictions. Section 56–1–220 requires an eye examination for renewal of a driver's license, sets the minimum corrected vision requirement at 20/40 in one eye and makes it a misdemeanor for any person "to drive a motor vehicle in this State without the use of such correction." Finally, section 56–1–520 provides in part:

The Department shall administer and enforce the provisions of this article in general, and *law enforcement officers generally shall also enforce applicable provisions within their respective jurisdictions.*

(Emphasis added.) This statute neither explicitly nor by implication provides for a cause of action against a law enforcement officer or his jurisdiction for failing to enforce sections 56–1–170 and 56–1–220. Defendant Dyar was authorized to enforce those provisions with the discretion to decide whether or not McIntyre had violated them and, if so, whether or not to arrest him. This statutory authorization is not comparable to, for example, section 16–5–30 which expressly makes a law enforcement officer liable for property damage caused by his failure or refusal to perform his duty to quell a mob. *See also, e.g.,* Section 16–5–60, Code of Laws of South Carolina, 1976 (making county liable for damages to person or property resulting from violation of person's civil rights). Section 56–1–520, then, does not create a special relationship exception to the otherwise public duty to enforce the law.

(2) Section 56–5–2930 of the South Carolina Code of Laws, 1976, provides:

It is unlawful for any person who is a habitual user of narcotic drugs or any person who is under the influence of intoxicating liquors, narcotic drugs, barbiturates, paraldehydes or drugs, herbs or any other substance of like character, whether synthetic or natural, to drive any vehicle within this State.

Section 56–5–6170 of the South Carolina Code of Laws, 1976, provides in part:

The Department shall administer and enforce the provisions of this chapter with respect to State highways, and law

enforcement officers generally shall also enforce this chapter within their respective jurisdictions.

Again, this statute, section 56–5–6170, does not expressly or by implication create a private cause of action against a law enforcement officer or his jurisdiction for a failure to arrest a person for driving under the influence. It authorizes, first, the Department and, secondarily, other law enforcement officers to enforce the driving under the influence law on state highways. This authorization gave defendant Dyar the discretion to remove McIntyre from the highway or not as the situation appeared to Dyar to require. His failure to do so did not result in a breach of any duty to the plaintiffs because the law he failed to enforce imposed no duty on him other than the duty he owed the public. Section 56–5–6170, then, does not create a special relationship exception to the otherwise public duty to enforce the law.

Although there is authority that circumstances can also create a special relationship exception to the otherwise public duty to enforce drunk driving laws (*see, e.g., Irwin v. Ware, supra*), the Court concludes as a matter of law, after viewing the facts in the light most favorable to the plaintiffs, neither the acts of defendant Dyar nor his failures to act "rise to the level required to establish a special duty" to the plaintiffs. *Crosby v. Town of Bethlehem*, 90 A.D.2d at 135, 457 N.Y.S.2d at 619. The majority of jurisdictions that have considered this issue have determined that similar circumstances and, in some cases, more egregious circumstances, do not convert the duty owed to the public generally into one owed to an individual plaintiff. *See, e.g., Shore v. Stonington, supra.* Again using the discretionary function immunity so firmly rooted in South Carolina, this Court concludes that circumstances giving rise to a special rela-

tionship exception to the otherwise public duty to remove drunk drivers from the highways would be circumstances manifesting malice, corruption, intent to injure and the like. There are no such circumstances here.

The plaintiffs also argue that the fact that an accident had occurred, that is, McIntyre's missing the stop sign and running into the field, heightened defendant Dyar's duty to arrest McIntyre for drunk driving, in effect altering Dyar's duty from a discretionary to a ministerial one. But section 56–5–6170, the same statute that authorizes the Department and law enforcement officers in general to enforce the highway laws, further provides:

> *No police officer* in investigating a traffic accident *shall necessarily deem the fact that an accident has occurred as giving rise to the presumption that a violation of a law has occurred. Arrests* and criminal prosecution *for violation of this chapter shall be based upon evidence of a violation of the law.*

(Emphasis added.) The fact that the statute itself requires an arrest to be based, not on a presumption, but on evidence of a violation of the law reinforces the conclusion that defendant Dyar's duty to arrest is a discretionary one.[19]

To sum up, the Court concludes that South Carolina, having expressly recognized the public duty/private duty distinction, would apply that distinction to the law enforcement activity and hold that the duty to enforce the law is a public duty in general. An individual plaintiff seeking to hold a law enforcement officer liable for a failure to enforce the law must show that by statute or circumstances he is owed a special duty. More specifically, regarding the duty to enforce the laws relating to driving while intoxicated or otherwise impaired, the Court concludes that the South Carolina

---

**19.** Regarding McIntyre's running off the road, the plaintiffs also argue that defendant Dyar failed to make an accident report as required by Section 56–5–1270 Code of Laws of South Carolina, 1976, as amended. Aside from the proximate cause issue presented by this argument, the plaintiffs assume without supporting authority that McIntyre's running off the road consti-

tuted an accident. Section 56–5–1270 does not define "accident." The record manifests, however, that the McIntyres' vehicle was not damaged and that they were unhurt. In any event, the Court finds this alleged breach created no duty on the part of these defendants to the plaintiffs.

Supreme Court would hold that duty to be a public duty unless an individual plaintiff can establish by statute or circumstances the existence of a special duty owing to him. Applying these conclusions here, the Court finds the plaintiffs have failed to establish by statute or circumstances that these defendants owed them a special duty.

The Court is not unmindful of the tragedy the plaintiffs have suffered and continue to suffer. Its sympathy is extended to them and to their family members as it is to any person harmed by a lawbreaker. But it cannot impose liability on these defendants for the damages resulting from that tragedy.[20] The law requires the existence of a duty owing from these defendants to the plaintiffs in order to impose such liability. Under the facts viewed in the light most favorable to the plaintiffs, that duty does not exist here and, for that reason, these defendants are entitled to judgment as a matter of law on the plaintiffs' third and fourth causes of action.[21]

### B.

The eighth cause of action alleges the conduct of defendant Dyar as set forth earlier in this order,[22] acting individually and/or as an agent of Oconee County, was so outrageous and so extreme as to subject the plaintiffs to the intentional infliction of emotional distress. The Court concludes that summary judgment for these defendants must be granted because the plaintiffs cannot as a matter of law establish at least one element of this cause of action.

The intentional infliction of emotional distress is also known as the tort of outrage. South Carolina expressly recognized this tort in *Ford v. Hutson*, 276 S.C. 157,

276 S.E.2d 776 (1981), and adopted the rule of liability stated in the *Restatement (Second) of Torts (1965):*

§ 46. Outrageous Conduct Causing Severe Emotional Distress.

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

276 S.C. at 162, 276 S.E.2d at 778. The South Carolina Supreme Court set forth the elements, citing with approval *Vicnire v. Ford Motor Co.*, 401 A.2d 148 (Me.1979):

'Specifically, in order to recover for the intentional infliction of emotional distress, a plaintiff must establish that (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct, *Restatement (Second) of Torts* § 46, Comment *i;* (2) the conduct was so "extreme and outrageous" as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community," *Restatement (Second) of Torts* § 46, Comment *d;* (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was "severe" so that "no reasonable man could be expected to endure it." *Restatement (Second) of Torts* § 46, Comment *j.* Although "severe" emotional distress is usually manifested by "shock, illness or other bodily harm," such objective symptomatology is not an absolute prerequisite for recovery of

---

**20.** *Cf. Sharpe v. Department of Mental Health*, 292 S.C. 11, 20, 354 S.E.2d 778, 783 (Ct.App. 1987) (Bell, J., concurring) (after finding no liability on part of defendant Department of Mental Health for death of man killed by released mental patient, Judge Bell observed: "[The victim's] death was a terrible misfortune. In law, however, his action lies against the one who inflicted the harm, not against another who failed to prevent it.").

**21.** As noted earlier, the fourth cause of action is against defendant Holcombe, the Oconee County Sheriff, under section 23–13–10 of the South

Carolina Code of Laws. Section 23–13–10 makes a sheriff liable for the acts of his deputies who act as his representatives. *Rutledge v. Small*, 192 S.C. 254, 6 S.E.2d 260 (1939). Because the Court has concluded the third cause of action alleges no actionable negligence on the part of defendant Dyar (or his alleged principal, defendant Oconee County), it necessarily reaches the same conclusion as to the fourth cause of action brought against defendant Holcombe for defendant Dyar's alleged negligence.

**22.** *See supra* Part I.

damages for intentional ... infliction of emotional distress. *Restatement (Second) of Torts* § 46, Comment *k.*'

276 S.C. at 162, 276 S.E.2d at 778–79.

Whether or not defendant Dyar's conduct was so extreme and outrageous as to establish liability for the intentional infliction of emotional distress is a threshold question for the Court to determine. *Todd v. South Carolina Farm Bureau Mutual Insurance Co.,* 283 S.C. 155, 167, 321 S.E.2d 602, 609–10 (Ct.App.1984), *modified on other grounds,* 287 S.C. 190, 336 S.E.2d 472 (1985). If defendant Dyar's conduct cannot reasonably be regarded as outrageous or extreme, defendants Dyar and Oconee County are entitled to judgment as a matter of law.

■ Taking the facts in the light most favorable to the plaintiffs, this Court concludes that defendant Dyar's conduct cannot reasonably be regarded as outrageous or extreme or as exceeding "all possible bounds of decency." The Court has already determined that defendant Dyar's conduct was not characterized by malice or corruption. Instead, defendant Dyar, in the exercise of his discretion as a law enforcement officer, did not arrest or otherwise restrain McIntyre from driving as a result of his encounter with McIntyre. There is no evidence or inference that can reasonably be drawn therefrom that defendant Dyar did not act entirely within the scope of his duties as the law prescribes. Accordingly, summary judgment is granted to defendants Dyar and Oconee County on the plaintiffs' eighth cause of action.

### C.

The plaintiffs' final cause of action against any of these defendants is their ninth one, alleging defendant Dyar, individually and/or acting as an agent of defendant Oconee County, and Oconee County itself deprived the plaintiffs of rights guaranteed to them by the United States Constitution. The ninth cause of action is brought pursuant to 42 U.S.C. § 1983,[23] invoking this Court's "civil rights" jurisdiction under 28 U.S.C. § 1343(a)(3). The plaintiffs allege the failure of defendants Dyar and Oconee County by custom and practice to implement and follow adequate guidelines to insure that intoxicated or otherwise impaired drivers do not drive on South Carolina highways deprived the plaintiffs of their rights under the due process clause of the fifth amendment and the due process and equal protection clauses of the fourteenth amendment to the United States Constitution.[24] In addition, the plaintiffs allege that defendant Dyar's conduct as earlier described violated the same constitutional rights. Those rights are alleged to be a "liberty interest in his [her] good health without exigent circumstances," *Second Amended Complaint* ¶ 15(a) (Ninth Cause of Action), and "life, [or] quality of life," *Second Amended Complaint* ¶ 15(b) (Ninth Cause of Action). Again, the Court concludes that these defendants are entitled to judgment as a matter of law as to this cause of action for the reasons set forth below.

### 1. *Oconee County*

In order to hold defendant Oconee County liable under section 1983, the plaintiffs must establish that an "official policy" of Oconee County caused a constitutional tort. *Monell v. Department of Social Services of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). The plaintiffs' claimed constitutional deprivation arises in part from Oconee County's

**23.** 42 U.S.C. § 1983 provides in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**24.** U.S. Const. amend. V: "No person shall ... be deprived of life, liberty, or property, without due process of law...."

U.S. Const. amend. XIV, § 1: "No State shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

alleged failure to implement "appropriate guidelines and/or policies so as to adequately insure that drunken and/or physically impaired drivers would be prevented from operating their vehicles upon the highways." *Second Amended Complaint* ¶ 8 (Ninth Cause of Action). The plaintiffs also allege that, pursuant to the statutory laws of South Carolina, defendant Oconee County was under a duty to implement such guidelines and policies. *Second Amended Complaint* ¶ 12 (Ninth Cause of Action). Apparently, although the plaintiffs' argument is not altogether clear on this point, the plaintiffs contend that both defendant Oconee County itself had a duty to implement such policies and its sheriff, defendant Holcombe, had the same duty as "its policymaker" for which it is liable under *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

■ With respect to defendant Oconee County's alleged affirmative duty to implement the policies described above, the plaintiffs' contention is without merit under South Carolina law. There is no South Carolina statute that either expressly or by implication places on a South Carolina county any policymaking duty or authority to prevent drivers who are intoxicated or otherwise impaired from driving. *Cf.* Section 4–9–30(5), Code of Laws of South Carolina, 1976, as amended (county council authorized to levy taxes for, *inter alia,* public safety, including police protection, "subject to the general law of this State").[25] More-

over, it is well established in South Carolina case law that law enforcement at the county level is the exclusive province of the sheriff. *See, e.g., Allen v. Fidelity & Deposit Co. of Maryland,* 515 F.Supp. 1185, 1189–1190 (D.S.C.1981), *aff'd mem.,* 694 F.2d 716 (4th Cir.1982).

Regarding the plaintiffs' second basis for seeking to impose section 1983 liability on defendant Oconee County, that is, that its sheriff, defendant Holcombe, acts as its policymaker as far as preventing intoxicated or otherwise impaired drivers from driving, the Court notes that the ninth cause of action is not brought against defendant Holcombe for any alleged failure on his part but only against defendants Dyar and Oconee County. Therefore, their second ground for defendant Oconee County's alleged liability under section 1983 fails because they have not included defendant Holcombe in this cause of action.[26]

### 2. *Deputy Sheriff Dyar*

■ In order to hold defendant Dyar liable under section 1983, the plaintiffs must establish that he violated their rights secured by the United States Constitution or by federal law and that those rights were "clearly established" at the time of the alleged violation. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Davis v. Scherer,* 468 U.S. 183, 197, 104 S.Ct. 3012, 3020, 82 L.Ed.2d 139 (1984). The Court concludes that defendant Dyar cannot be held liable

**25.** The plaintiffs argue that certain language of Section 4–9–30(6) of the South Carolina Code of Laws grants a county the authority to delegate the law enforcement duty to the sheriff subject to approval by popular referendum. That language, however, applies only to South Carolina counties that have established a rural or other county police system pursuant to Chapter 6 of Title 53 of the 1962 South Carolina Code of Laws. Reference to the Local Law Index of the 1976 South Carolina Code of Laws allows the Court to judicially note that Oconee County has not established such a police system. The language, then, is not applicable to Oconee County. Moreover, subsection (5) of section 4–9–30 prohibits a county from appropriating county funds that would limit, duplicate, reorganize or restructure the sheriff's department without prior referendum approval.

**26.** Apart from the plaintiffs' failure to name defendant Holcombe in the ninth cause of action, their argument is groundless on the merits as well. The sheriff does not act as the "county policymaker" as to law enforcement matters in South Carolina. He is not responsible for establishing "binding *county* policy respecting [law enforcment] matters and [for adjusting] that policy *for the county* in changing circumstances." *Pembaur,* 475 U.S. at ——, 106 S.Ct. at 1300, 89 L.Ed.2d at 465 (emphasis added). Instead, the sheriff and the county are distinct and separate entities in South Carolina and the sheriff's actions or failures to act do not give rise to a section 1983 action against the county. *Allen v. Fidelity and Deposit Co. of Maryland, supra; see also Scott v. Vandiver,* 476 F.2d 238, 242–243 (4th Cir.1973).

under section 1983 for the reasons set forth below.

The plaintiffs allege that defendant Dyar violated their constitutional rights to good health without exigent circumstances and to life or quality of life in two ways: (1) by his failure to implement and follow adequate guidelines [27] to prevent individuals who are intoxicated or otherwise impaired from driving and (2) by his conduct as earlier described. The plaintiffs argue in effect that defendant Dyar's failure to arrest or otherwise restrain McIntyre deprived them of their alleged constitutional right to protection by the state from harm caused by an intoxicated or otherwise impaired driver. *Cf. Jensen v. Conrad,* 747 F.2d 185 (4th Cir.1984), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1754, 84 L.Ed.2d 818 (1985) (motion to dismiss granted in section 1983 action recognizing constitutional right to affirmative protection by government under the proper circumstances but holding such right not clearly established when alleged violation occurred); *Bruette v. Knope,* 554 F.Supp. 301 (E.D.Wis.1983) (section 1983 action stated claims against county law enforcement officers who failed to arrest or otherwise restrain a fellow officer who assaulted plaintiffs). This Court has found no authority, however, for the assertion that the plaintiffs possess such a right. There is no constitutional right to be protected by the state "against criminals or madmen" (or drunks) unless a constitutional duty to provide such protection arises "out of special custodial or other relationships created or assumed by the state in respect of particular persons." *Jensen v. Conrad,* 747 F.2d at 193–94; *Fox v. Custis,* 712 F.2d 84, 88 (4th Cir.1983). Having alleged no special relationship between the Patels and the state from which a duty to protect could have arisen, the plaintiffs have failed to make out a cognizable claim under section 1983.[28] Accordingly, defendant Dyar is entitled to judgment as a matter of law on the plaintiffs' ninth cause of action.

### III.

In conclusion, the summary judgment motion of defendants Dyar and Oconee County is granted as to the plaintiffs' third, eighth and ninth causes of action and the summary judgment motion of defendant Holcombe is granted as to the plaintiffs' fourth cause of action.[29] Accordingly, as to all of the plaintiffs' causes of action against these defendants, the County of Oconee, Oconee County Deputy Sheriff Steve Dyar and Oconee County Sheriff Earl Holcombe, judgment is granted to these defendants.

IT IS SO ORDERED.

---

**27.** The plaintiffs in their memorandum purport to quote from a policy manual compiled by defendant Holcombe regarding his deputies' law enforcement duties. The Court notes, however, that no policy manual has been made a part of the record and, in any event, reiterates that this cause of action is not brought against defendant Holcombe but only against defendants Dyar and Oconee County.

**28.** The plaintiffs' failure to demonstrate any constitutional right or duty would also protect Oconee County from 1983 liability if the County were in fact under a duty to establish policy regarding intoxicated drivers. *See supra* Part II(C)(1).

**29.** Although the complaint also names defendants Dyar and Holcombe in their individual capacities, there is no allegation (and no evidence) of wrongful conduct committed outside the scope of their respective official duties and from which individual liability to the plaintiffs could arise.